*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0296p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SOUTHERN REHABILITATION GROUP, P.L.L.C.
and JAMES P. LITTLE, M.D.,

> *Plaintiffs-Appellants*,

> No. 12-5903

    *v.*

SECRETARY OF HEALTH AND HUMAN
SERVICES; CIGNA GOVERNMENT SERVICES,
LLC; CIGNA HEALTHCARE, TENNESSEE,
COMPUTER SCIENCES CORPORATION, dba
AdvanceMed; and Q2 ADMINISTRATORS,
LLC,

> *Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:09-cv-00226—J. Ronnie Greer, District Judge.

Argued: July 24, 2013

Decided and Filed: October 18, 2013

Before: BOGGS and McKEAGUE, Circuit Judges; BECKWITH, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Wynne du M. Caffey, RAMSEY ELMORE STONE & CAFFEY PLLC, Knoxville, Tennessee, for Appellants. Robert C. McConkey III, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. David L. Steed, CORNELIUS & COLLINS, Nashville, Tennessee, for Amici Curiae. **ON BRIEF:** Wynne du M. Caffey, Robert S. Stone, RAMSEY ELMORE STONE & CAFFEY PLLC, Knoxville, Tennessee, for Appellants. Robert C. McConkey III, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. David L. Steed, CORNELIUS & COLLINS, Nashville, Tennessee, for Amici Curiae.

_____

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

———————————————

**OPINION**

———————————————

McKEAGUE, Circuit Judge.   Southern Rehabilitation Group and its medical director, Dr. James P. Little, brought this civil action against the Secretary of Health and Human Services and several past and present Medicare contractors seeking judicial review of the Secretary's final decision on 6,200 claims for Medicare reimbursement. Along with their assertion that the Secretary's decision was not supported by substantial evidence, plaintiffs also sought relief based on several constitutional, statutory, and state law theories of liability.   On a motion by the Secretary, the district court remanded the case so the Secretary could pay plaintiffs the disputed amount.   After the Secretary's payment, the case returned to the district court.   The district court concluded that plaintiffs' claims for payment were now moot, and it dismissed plaintiffs' remaining constitutional and statutory claims on the basis that they were barred by the jurisdictional provisions of the Medicare Act.   The court also determined that plaintiffs did not show they were eligible to collect interest on their claims, and further that it did not have jurisdiction over 8,900 other claims that plaintiffs alleged were still lingering in the administrative process.

For the following reasons, we affirm the district court's decision granting summary judgment to defendants on plaintiffs' federal and state law claims and on the 8,900 claims still in the administrative process, but we reverse its decision granting summary judgment on plaintiffs' claims for interest, and we remand for further proceedings consistent with this opinion.

**I.**

Plaintiff Southern Rehabilitation provides inpatient rehabilitation services in Kingsport, Tennessee.   In 2001, plaintiff Dr. James Little joined the group and became its medical director.   According to plaintiffs, they care for approximately 40 patients per

day, 70% of whom are insured through Medicare. This generates approximately 10,000 Medicare claims per year.

Plaintiffs submit their Medicare reimbursement claims under Medicare Part B, which is the portion of Medicare covering certain physician services. *See* 42 U.S.C. §§ 1395j-1395k. At all relevant times, the Medicare statute prescribed a process for reviewing claims. Initially, a provider's claim goes to a Fiscal Intermediary (generally a private insurance company, like defendant Cigna in this action, which is contracted by the government to review claims) for an "initial determination." The Fiscal Intermediary either pays or denies the claim. If the claim is denied, the provider can appeal the determination to the same Fiscal Intermediary for a "redetermination." If denied at that stage, the provider can appeal to a Qualified Independent Contractor (QIC) (such as defendant Q2 Administrators in this action) for a "reconsideration."[1] If the claim is again denied, the provider may appeal to an Administrative Law Judge (ALJ), who can conduct an evidentiary hearing, take testimony, and consider all of the issues, including any new issues under certain circumstances. If the ALJ denies the claim, the provider can seek review with the Medicare Appeals Council, whose decision is considered the final decision of the Secretary. If the claim is denied by the Appeals Council, the statute provides for judicial review of the "final decision" in federal court. *See* 42 C.F.R. § 405.904(a)(2) (reciting system of claim appeals); 42 U.S.C. § 405(g).

Between 2001 and 2006, plaintiffs allege they submitted approximately 15,000 claims for Medicare payment that defendant CIGNA Government Services denied in whole or in part because the claims lacked sufficient documentation. Plaintiffs maintain that 8,900 of those denials were appealed on September 6, 2002 to CIGNA for a

---

[1] Plaintiffs point out that while their claims were pending in 2005, this stage of the appeals process was changed by Congress. Prior to 2005 an appeal from the Fiscal Intermediary's redetermination would go to a Fair Hearing Officer (which involved an "in person" hearing), not a Qualified Independent Contractor.

redetermination, but that no redetermination has ever been issued. Plaintiffs refer to these claims as the Group 1 claims, and allege they are worth approximately $365,000.[2]

Plaintiffs assert that the remaining 6,200 claims were also appealed, and that all but 11 of those claims resulted in a partially favorable Medicare Appeals Council decision. Plaintiffs refer to these 6,200 claims as Groups 2, 3, and 4.[3] Plaintiffs believed they were still owed $107,171 on their Groups 2, 3, and 4 claims.

Plaintiffs filed this civil action seeking judicial review of the final agency decision pursuant to 42 U.S.C. § 1395ff(b)(1). They sued the Secretary in her official capacity, as well as several past and present Medicare contractors who perform claims-review functions at various stages of the review process. Count I of plaintiffs' Amended Complaint sought review of the Secretary's decision on the Groups 2, 3, and 4 claims, alleging her decision was not based on substantial evidence and was arbitrary and capricious. Count II alleged that defendants "violated numerous laws and regulations under the Social Security Act," and that on this basis plaintiffs were owed reimbursement at the highest level of payment on their Groups 2, 3, and 4 claims. Plaintiffs further asserted that these violations resulted in loss of their appeal rights on their Group 1 claims (the 8,900 claims, which have allegedly been languishing at the early stages of review since 2002), and claimed they were owed money damages as a result of these delays. Count III alleged that the Social Security Act and Medicare regulations, "as implemented by the Secretary," violated plaintiffs' due-process and equal-protection rights, and as a result, "Plaintiffs incurred monetary damages." Counts IV through IX alleged various state-law theories of liability, including breach of

---

[2]Plaintiffs also allege that because these 8,900 claims have not been paid, they have been denied the ability to collect payments from secondary insurance sources that pay costs not covered by Medicare, but only pay those costs after the Secretary pays her portion of the claim. Am. Compl. at 22, ¶ 61, Page ID #51.

[3]The Group 2 claims consist of 11 claims that plaintiffs at one point alleged were not the subject of an ALJ or Appeals Council decision, Am. Compl. at 2, n.2, but in their briefing to this Court they suggest the Group 2 claims "were addressed in an adverse MAC Decision on August 14, 2009." Regardless, as discussed below, the Secretary ultimately paid these 11 claims at the level plaintiffs demanded.

contract, unjust enrichment, fraud, misrepresentation, negligence, gross negligence, recklessness and violations of the Tennessee Prompt Pay Act.

In sum, plaintiffs sought reimbursement on the 8,900 claims in Group 1; reimbursement for their Groups 2, 3, and 4 claims; money damages for lost secondary insurance payments; administrative expenses in the amount of $1,963,990; interest on the unreimbursed claims; attorney's fees, costs, and expenses; declaratory relief; and injunctive relief requiring the Secretary to revise the claims-coding guidelines and requiring the Secretary to hire and train new reviewers with expertise in rehabilitative services.

Although plaintiffs accused defendants of committing several federal infractions, plaintiffs' Amended Complaint did not claim that the district court had jurisdiction under the federal question statute, 28 U.S.C. § 1331.[4]  Rather, their Amended Complaint claimed the district court had jurisdiction under 42 U.S.C. § 1395ff(b) and 42 U.S.C. § 405(g) (the Social Security Act); 28 U.S.C. § 1361 (original jurisdiction to provide mandamus relief); 28 U.S.C. § 1367 (supplemental jurisdiction); and 28 U.S.C. § 2201 (declaratory relief).

In defendants' answer to the Amended Complaint, they asserted that for any matter for which plaintiffs did not receive a final agency decision, and to the extent the allegations concerned anything other than review of a final decision, those claims should be dismissed.  Accordingly, defendants moved to dismiss the portion of Count II dealing with the 8,900 claims still in the administrative process, and also moved to dismiss Counts IV through IX (the state law claims).

During the course of the next year, defendants filed two motions seeking an extension of time to file the administrative record, which, by defendants' own admission, may be the "single largest administrative record [their] office has compiled for any

---

[4]Plaintiffs' initial Complaint *did* assert that the district court had jurisdiction under 28 U.S.C. § 1331 (federal question).  R. 1, Compl. at 5, Page ID # 5.  On appeal, plaintiffs state that the sole bases for the district court's subject matter jurisdiction were the Social Security Act's judicial-review provisions detailed below.  Pl's Br. at 1.

action for judicial review," consisting of over 300 volumes and 145,000 printed pages. R. 31-1, Decl. of Christopher Randolph, Page ID #228. Ultimately, having realized the administrative burden in compiling the record was too great, on October 13, 2011, the Secretary filed a motion for partial remand (only as to Count I and the portion of Count II dealing with plaintiffs Group 2, 3, and 4 claims) in order to pay the remaining amount in controversy, *i.e.*, the disputed differences in payment on the Groups 2, 3, and 4 claims of $107,171.07. The district court granted the partial remand on October 18, 2011.

On October 25, 2011, plaintiffs filed a motion for reconsideration of the remand order arguing that reimbursement on their Groups 2, 3, and 4 claims would not make them whole and that payment would wrongly relieve the Secretary of having to file the administrative record. The district court declined to reconsider its remand ruling and concluded that the administrative record was unnecessary for purposes of deciding defendants' motion to dismiss, which the court believed involved purely legal issues. On remand, the Secretary made the payment.

Shortly after the hearing on plaintiffs' motion to reconsider the remand ruling, they filed their response to defendants' motion to dismiss. Plaintiffs' response conceded that their Group 1 claims had not yet been subject to a final decision by the Secretary. Nevertheless, they argued that the district court had jurisdiction to consider all of the claims raised in their amended complaint because those claims were "inextricably intertwined with [their] claims for payment for which they have exhausted their administrative remedies . . . ." R. 56, Resp. to Mot. to Dismiss at 7-8, Page ID #324-25. With respect to their Group 1 claims, plaintiffs argued that further pursuit of their administrative remedies would be futile and that the district court should excuse the exhaustion requirement for those claims. Finally, plaintiffs argued that the Secretary was not the only real party in interest, and that it is permissible upon judicial review of the final decision to directly sue Medicare contractors for their individual torts.

After receiving the Secretary's notice of payment, the district court *sua sponte* converted defendants' motion to dismiss into a motion for summary judgment, and gave plaintiffs an opportunity to provide "any evidence, which would establish a genuine

issue of material fact on the question of whether, in light of the Secretary's Notice of Payment on Remand, plaintiffs' action is now moot." R. 63, Order Converting Mot. to Dismiss, Page ID #376. The court's order also included a proposed opinion granting summary judgment to defendants on the basis that plaintiffs' claims for additional payments had become moot, and that the court lacked subject matter jurisdiction over all of plaintiffs' other claims for relief, including their constitutional claims. R. 63-1 at 6-15, Page ID #382-91; *S. Rehab. Grp., P.L.L.C. v. Sebelius*, 874 F. Supp. 2d 733, 737-41 (E.D. Tenn. 2012) The district court further concluded that plaintiffs were not entitled to interest on the $107,171 the Secretary paid on remand. *Id.* at 18, Page ID #394; *S. Rehab. Grp., P.L.L.C.*, 874 F. Supp. 2d at 741-42.

Plaintiffs responded by requesting oral argument and repeating most of their prior arguments. The district court's subsequent order adopted its prior proposed order and granted summary judgment to defendants while emphasizing that plaintiffs "submitted no additional evidence," and that plaintiffs merely reiterated arguments previously made. *S. Rehab. Grp., P.L.L.C.*, 874 F. Supp. at 735.

Plaintiffs timely appealed.[5]

## II.

This court reviews a decision to grant summary judgment de novo. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden to show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

---

[5]On appeal, the American Medical Association, and medical associations from Tennessee, Kentucky, Michigan, and Ohio, all of whom have members who provide service to Medicare patients, filed an amicus brief in support of plaintiffs.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Viewing the evidence in the light most favorable to the non-moving party, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). A dismissal for lack of jurisdiction is reviewed de novo. *Rimmer v. Holder*, 700 F.3d 246, 261 (6th Cir. 2012).

## III.

### A. Guiding principles

In general, the United States is protected by sovereign immunity and on this basis cannot be sued without its consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Only Congress can waive immunity, but "waivers of federal sovereign immunity must be unequivocally expressed in the statutory text." *United States v. Idaho ex rel. Dir., Idaho Dept. of Water Res.*, 508 U.S. 1, 6 (1993) (quotation marks and citations omitted). "'Any such waiver must be strictly construed in favor of the United States,'" *Id.* at 7 (quoting *Ardestani v. INS*, 502 U.S. 129, 137 (1991)), "'and not enlarged beyond what the language of the statute requires.'" *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983)).

The rule requiring express consent also applies to specific items of monetary recovery, *see Lane v. Pena*, 518 U.S. 187, 192 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."), and to claims of interest to be imposed against the government, *see Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986) ("[I]nterest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest."); *see also Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 778 n.2 (5th Cir. 2010) (noting Congress only provided a limited waiver of immunity on Medicare claims seeking interest).

Further, where Congress has consented to suit against the government, it may define the terms and conditions under which it is willing to allow the United States to

be sued.  *See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 274 (1983) ("When Congress attaches conditions, such as statute of limitations, to legislation waiving the United States' sovereign immunity, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").   Congress's requirement that claims be presented or exhausted in administrative proceedings is one such condition.  *See, e.g., Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (conditioning consent under FTCA on exhaustion of administrative remedies); *Bruecher Found. Serv., Inc. v. U.S.*, 383 F. App'x 381, 386-87 (5th Cir. 2010) (conditioning consent on presentation of claims to the IRS).

One final note relevant to plaintiffs' claims here.  We have previously emphasized how participation in the Medicare program is voluntary, and that those providers who choose to participate have "no guarantee of solvency." *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 720-21 (6th Cir. 1991).  Participation "involves a degree of risk which increases directly with the percentage of patient services paid for with government funds . . . ." *Id.*  Plaintiffs here admit that 70% of the patients they care for are insured through Medicare.  Am. Compl. at 18, ¶¶ 47, 50, Page ID #47-48.  In other words, plaintiffs voluntarily participated in the program, knowing they had no guarantee of solvency and that they were going to be subject to the conditions and limitations established by Congress in its limited waiver of sovereign immunity under the Medicare Act's judicial review provisions.

It is against this backdrop that we consider the issues in this case.

**B. Subject-matter jurisdiction over plaintiffs' constitutional and state-law claims**

Plaintiffs first argue that they should be permitted to bring their constitutional and state-law claims into federal court alongside their claims for reimbursement.  They assert that by exhausting their reimbursement claims, they satisfied the statutory prerequisites to filing a federal lawsuit, and should therefore be able to bring along any other claims they have against the Secretary and her contractors.  Whether plaintiffs were permitted to bootstrap a number of state and federal causes of action to their request for judicial review of their reimbursement claims depends upon whether they

satisfied the conditions and limitations Congress attached to judicial review under the Medicare Act.  *See* 42 U.S.C. §§ 405 (g) and (h).**6**  We conclude that plaintiffs have not satisfied Congress's requirements.

42 U.S.C. § 1395ff(b)(1)(A) provides the jurisdictional basis for judicial review of a final decision of the Secretary on a Medicare Part B claim.  It states that "any individual dissatisfied . . . [with a determination] shall be entitled to . . . judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title."  Section 405(g) states in relevant part that "Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . ."  Section 405(g) also prescribes the reviewing court's power:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

Section 405(g) has been interpreted to contain *two* prerequisites to judicial review.  First, a "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court."  *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000).  Second, a waivable requirement of exhaustion of administrative review.  *Id.* at 26;  *Mich. Ass'n of Homes & Servs. for the Aging v. Shalala*, 127 F.3d 496, 499 (6th Cir. 1997).

The Medicare Act also expressly adopts the Social Security Act's jurisdictional bar to judicial review found at 42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii ("The provisions of . . . subsection . . . (h) . . . of section 405 of this title shall also apply with

---

**6**State-law causes of action in the Medicare context are subject to the same remedial scheme as plaintiffs' other claims.  *See, e.g., Bodimetric Health Services*, *Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 487 (7th Cir. 1990) ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.").

respect to this subchapter . . . ."). Section 405(h) further limits judicial review by stating:

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

Section 405(h) "'channels most, if not all, Medicare claims through [the] special review system'" of an administrative hearing and "'purports to make exclusive the judicial review method set forth in 405(g).'" *Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000) (quoting *Ill. Council*, 529 U.S. at 10).

In sum, Congress provided a limited waiver of sovereign immunity in the Medicare Act by permitting claimants to file civil actions seeking judicial review of the Secretary's final decision. However, Congress conditioned that waiver on several elements: (1) claimants are required to have presented their claims to the Secretary; (2) claimants must exhaust their administrative remedies resulting in a final decision; and (3) claimants are barred from raising federal question claims that are "inextricably intertwined" with their claim for benefits. In this case, we conclude that plaintiffs have not shown they satisfied the first of these requirements.

In *Weinberger v. Salfi*, 422 U.S. 749 (1975), the Supreme Court held that § 405(h) barred jurisdiction over a direct challenge to the constitutionality of a provision of the Social Security Act. The Court stated that § 405(h)'s jurisdictional bar applies "irrespective of whether resort to judicial process is necessitated by discretionary decisions of the Secretary or by his nondiscretionary application of allegedly unconstitutional statutory restrictions." *Id.* at 762. The Court noted that while § 405(h) did not "preclude constitutional challenges," it did "require that they be brought" under the same "jurisdictional grants" and "in conformity with the same standards . . . applicable to nonconstitutional claims arising under the Act." *Id.* Such

a requirement is "manifestly reasonable" because it "assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act." *Id.; see also Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (reiterating that "all aspects" of any present or future claim must be "channeled" through the administrative process).

The Supreme Court recently reemphasized that "the bar of § 405(h) reaches beyond ordinary administrative law principles of ripeness and exhaustion of administrative remedies—doctrines that in any event normally require channeling a legal challenge through the agency." *Ill. Council*, 529 U.S. at 12 (quotation marks and citations omitted). In *Illinois Council*, a nursing association attacked certain Medicare regulations as, *inter alia*, unconstitutionally vague and, as here, attacked Medicare's administrative procedures as violative of due process. *Id.* at 7. In response to the association's argument that § 405(h) did not bar jurisdiction over these constitutional claims, the Court stated: "§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court. The Council has not done so here, and thus cannot establish jurisdiction under § 405(g)." *Id.* at 15 (citations omitted); *see also id.* at 24 ("At a minimum, however, the matter must be presented to the agency prior to review in a federal court. This the Council has not done."). The Court reiterated that § 405(h) "demands the channeling of *virtually all legal attacks* through the agency" in order to "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts . . . ." *Id.* at 13 (quotation marks omitted) (emphasis added); *see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 349 (3d Cir. 2012) ("Nichole Medical is not exempt from the [two-part] exhaustion requirement simply because the claims arising under the Act are not within the jurisdiction of the Secretary."); *BP Care, Inc. v. Thompson*, 398 F.3d 503, 511 (6th Cir. 2005) (noting that "[a]lthough ALJs in Medicare administrative proceedings generally do not decide constitutional issues, and although BP Care's challenge to the

constitutionality of successor liability is not fact-specific," their claim for relief still "arises under" the Medicare Act requiring presentment to the Secretary).

Here, plaintiffs argue that the requirements in §§ 405(g) and (h), if not satisfied, do not erect an absolute bar to *all* causes of action inextricably intertwined with the claim for review of the Secretary's decision; rather, according to plaintiffs, §§ 405(g) and (h) are "merely a jurisdictional threshold that must be met before the district court may hear those related claims . . . . Section 405(g) is only a mandate that healthcare providers first exhaust their administrative remedies through a final decision . . . . [o]nce this requirement is met, the district court had jurisdiction over all of [plaintiffs'] causes of action and requests for relief . . . ."

But this argument focuses on the Medicare Act's *exhaustion* requirement while ignoring the nonwaivable and nonexcusable *presentment* requirement, which mandates that "virtually all legal attacks" be presented to the agency—including constitutional challenges. *Ill. Council*, 529 U.S. at 7, 12; *Salfi*, 422 U.S. at 762. Plaintiffs' Amended Complaint, while exhaustively detailing the administrative process, does not allege they ever presented their federal or state law claims to the agency. Plaintiffs' response to defendants' motion to dismiss argued that they had exhausted the administrative appeal process, R.56, Resp. to Mot. to Dismiss at 9, 11, Page ID #326, 328, and it also properly recited that "[t]he jurisdictional grant contained in 405(g) contains two elements," including "the nonwaivable requirement is that the claimant present his or her claim to the Secretary." R. 56, Resp. to Mot. to Dismiss at 13, Page ID #330. But plaintiffs never established that they actually satisfied this requirement with respect to their federal and state-law claims.

Moreover, the district court's proposed order granting summary judgment to defendants gave plaintiffs notice of this presentment defect. The district court stated it would be denying plaintiffs' constitutional claims for lack of subject-matter jurisdiction because their claims were not "channeled through the administrative process." R. 63-1, Order at 10, Page ID # 386 (citing *Ringer*, 466 U.S. at 614-15). The court invited plaintiffs to submit any "additional evidence" in response to the proposed order.

Plaintiffs responded by claiming that they could not submit any additional evidence because defendants had not produced the administrative record, and they reemphasized that they had "exhausted the administrative review channels," and "properly progressed through the administrative review process."  R. 64, Resp. to Order at 4, Page ID #399.

"The plaintiff bears the burden of establishing subject matter jurisdiction over a claim."  *Shea v. State Farm Ins.* Co., 2 F. App'x 478, 479 (6th Cir. 2001) (per curiam) (citing *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993)).  By failing to establish that they satisfied the presentment requirement, plaintiffs have not fulfilled the conditions placed on the limited waiver of immunity in the Medicare Act.  Thus, the district court correctly determined that it lacked subject-matter jurisdiction over these claims.[7]

---

[7]Neither did the district court have jurisdiction over plaintiffs' federal and state-law claims against the Secretary's contractors.  Section 405(h) precludes actions brought "against the United States, the Secretary, or any *officer or employee thereof*."  42 U.S.C. § 405(h) (emphasis added).  Congress specifically provided that administration of the Act "shall be conducted through contracts with medicare administrative contractors . . . ."  42 U.S.C. § 1395u(a); *see also* 42 C.F.R. § 421.5(b) ("Intermediaries and carriers *act on behalf of [the agency]* in carrying out certain administrative responsibilities that the law imposes. ") (emphasis added). Further, Medicare contractors, like CIGNA and Q2 Administrators in this case, have been found by several federal courts to be agents of the Secretary and thus clothed with immunity.  *See, e.g., Nichole Med. Equip. & Supply, Inc.*, 694 F.3d at 350 (3d Cir. 2012) ("Medicare contractors are entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties."); *Midland Psychiatric Assoc., Inc. v. United States*, 145 F.3d 1000, 1002-03 (8th Cir. 1998) (holding Medicare contractors are government agents because they are "[u]nder contract with the Secretary of [HHS], [and] do the work of the Government on the Secretary's behalf."); *Bushman v. Seiler*, 755 F.2d 653, 655 (8th Cir. 1985) ("It is well settled that Medicare intermediaries and carriers can be governmental agents for immunity purposes.") (citation omitted); *Bodimetric Health Serv., Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 483 (7th Cir. 1990) ("If dissatisfied claimants could avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary, the Medicare Act's goals of efficiency and finality would be substantially undermined."); *see also Berger v. Pierce*, 933 F.2d 393, 396 (6th Cir. 1991) (relying on the Eighth Circuit's *Bushman* analysis that Medicare agents receive immunity to hold that contracted fiscal agents of the Federal Insurance Administration are clothed with immunity).  Arguing against the weight of authority, plaintiffs point to a smattering of cases where courts have been reluctant to extend immunity to contractors, but those cases are inapposite here because they either involve tortious conduct that was outside the scope of the authority conferred by Congress and the Secretary, *see Rochester Methodist Hosp. v. Travelers Ins. Co.*, F.2d 1006, 1009-10 (8th Cir. 1984) ("[T]he tort of fraud has been both alleged and proved, and the government clearly took the position . . .that [the contractors] clearly exceeded their authority."); or they involved a claim that was not inextricably intertwined with a benefits claim, *see Ardary v. Aetna Health Plans of S. Cal.*, 98 F.3d 496 (9th Cir. 1996) (seeking punitive damages for a wrongful death), *limited by Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1113 (9th Cir. 2003) (holding that *Ardary* "does not extend beyond patients and torts committed in the sale or provision of medical services").  Here, plaintiffs have not shown the contractors acted outside the scope of their authority, and they readily admit that their claims are inextricably intertwined with their benefits claims.  Accordingly, immunity for the contractors is appropriate.

**C. Subject-matter jurisdiction over the 8,900 claims lingering in the administrative process**

Plaintiffs next argue that, since September 6, 2002, several thousand of their claims (referred to as the Group 1 claims) have been stuck at the first level of administrative appeal (the "redetermination" phase), and that no redetermination has ever issued. They allege that they requested a redetermination on these claims through three separate letters and supporting documentation. They also assert that CIGNA "agreed to pull documentation submitted with the earlier submission and process the appeals" accordingly. Am. Compl. at 21, Page ID #50. Their Amended Complaint only states that they filed their initial request in 2002 and have been waiting for a decision since that time. Plaintiffs admit that these claims are unexhausted, R. 56, Resp. to Mot. to Dismiss at 15-16, Page ID #332-33, yet they assert that requiring exhaustion of these claims would be futile, and on this basis, the district court had jurisdiction to decide whether plaintiffs should be reimbursed for these claims.

There is no question that the jurisdictional limits in §§ 405(g) and (h) preclude plaintiffs' admittedly unexhausted claims. *See Michigan Ass'n of Homes & Servs. for the Aging*, 127 F.3d at 499 (discussing two-prong presentment and exhaustion requirement under § 405(g)). And although the exhaustion requirement is waivable, *see Ill. Council*, 529 U.S. at 26, the requirement has not been waived in this case. Accordingly, plaintiffs' argument that exhaustion should be excused here appears to be the only possible basis for getting these claims in front of the district court.

There are three possible exceptions to the exhaustion requirement, only one of which, the *Michigan Academy* exception, may apply in this case. In *Bowen v. Mich. Acad. of Family Physicians*, the Supreme Court permitted a group of physicians to bring a federal suit challenging the validity of a Medicare regulation establishing the method for calculating payments. 476 U.S. 667, 680 (1986), *superseded on other grounds by* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99–509, 100 Stat. 1874, 2037–38 (1986). At the time, neither administrative nor judicial review were available for challenges to such method determinations (the 1986 revisions to the statute now

require administrative review of challenges to method determinations).  The Court rejected the Secretary's argument that § 405(h) barred judicial review of such actions, and thus permitted the physicians' suit even though they had not exhausted their administrative remedies.  *Id.* at 667.  We have since recognized that in *Illinois Council*, the Supreme Court "sharply limited" the *Michigan Academy* exception, to now apply only "where application of § 405(h) . . . would mean no review at all."  *BP Care, Inc.*, 398 F.3d at 509-10 (quoting *Ill. Council*, 529 U.S. at 19).

Plaintiffs argue that their Group 1 claims have been "stuck in limbo beyond [their] control since 2002."  Appellant Br. at 23.  But the fact that the claims have taken a very long time to be resolved or that the delay involves some other form of hardship does not necessarily mean there is "no review at all."  *Ill. Council*, 529 U.S. at 19.  As the *Illinois Council* Court noted, Congress's decision to require a universal obligation to first present a claim to the Secretary, "*though postponing review in some cases*," may result in better overall review.  *Id.* at 20.  Accordingly, the relevant question is not whether a particular case involves "added inconvenience or cost."  *Id.* at 22.  The relevant question is whether the hardship "turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review."  *Id.* at 22-23 (emphasis added) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496-97 (1991)).

Although they received an initial determination on their Group 1 claims, plaintiffs argue that review of those claims has been completely precluded because the Secretary's regulations do not permit them to bypass the first level of appeal in order to go directly to the next level of appeal.  Accordingly, after appealing CIGNA's initial determination, plaintiffs maintain they have just had to wait for a decision with no other recourse.  They contend that this is a violation of their due-process rights.

In discussing recent administrative amendments to the appeals process, the Secretary has acknowledged that "pre-[amendment] claims appeals did not have timeframes within which decisions must be issued."  77 Fed. Reg. 29002, 29017 (May 16, 2012).  The Secretary has also indicated her desire (as part of the restructured appeals process) to provide relief for parties in plaintiffs' position.  *See id.* ("We

proposed, and are finalizing in this rule, that parties who demonstrate that they requested an appeal of a [pre-amendment] claim but did not receive a decision would be entitled to refile their appeal request, and would have their appeal processed under the [current appeal] regulations . . . ."). According to the Secretary, "[a]pplying the decision making timeframes for current claims appeals to pre-[amendment] claims appeals will likely result in quicker turnaround times for pre-[amendment] claims appeals, and a more streamlined process . . . ." *Id.*

The current regulations establish that if plaintiffs did not receive a timely decision on their initial request for a redetermination, their relief would be to refile their appeal request with the appropriate fiscal intermediary for a redetermination. *See* 76 Fed. Reg. 65909, 65914 (Oct. 24, 2011); 77 Fed. Reg. 29002, 29016 (May 16, 2012) (effective July 16, 2012) ("Any pre-[amendment] claims appeals identified on or after the effective date of this final rule . . . that are still pending at the first level of appeal . . . would be processed beginning at the redetermination level under the [new] regulations.").

This procedure is in contrast with regulations permitting "escalation" of an appeal to the next level absent a timely decision by a QIC, ALJ, or the Appeals Council. *See* 42 C.F.R. § 405.970, § 405.1104, & § 405.1132. Plaintiffs rely on this distinction in the regulations as a basis for arguing that the Secretary has failed to provide them with an avenue of relief. But the Secretary's regulations merely track Congress's language in the Medicare Act. In the Act, Congress expressly permitted claimants to escalate their appeal beyond the QIC determination, 42 U.S.C. § 1395ff(c)(3)(C)(ii), the ALJ hearing, § 1395ff(d)(3)(A), and the Appeals Council determination, § 1395ff(b)(2)(C)(i)(II), absent a timely decision at those stages. Notably, Congress did not enact a provision permitting escalation beyond the appeal to the fiscal intermediary. On the contrary, Congress mandated that "[n]o initial determination may be . . . appealed . . . unless the fiscal intermediary has made a redetermination of that initial determination." 42 U.S.C. § 1395ff(a)(3)(B)(I).

Accordingly, in promulgating her appeal regulations, the Secretary did not provide a way for claimants to escalate their redetermination—the *only* level of appeal that Congress expressly required claimants to satisfy. The Secretary acknowledged this congressional requirement when she considered public comments to the new regulations. 70 Fed. Reg. 11420, 11439 (March 8, 2005) ("We do not believe that it is appropriate to permit escalation of redeterminations when contractors do not meet their deadlines. We believe this is consistent with the statute in that the Congress seems to have weighed the merits of escalation and chose to implement that option only at the QIC level and above."). Plaintiffs have never challenged the validity of the statute, or otherwise argued that it is Congress (not the Secretary) that has precluded plaintiffs from seeking judicial review.[8]

By permitting claimants to refile their appeal request, the Secretary's regulation endeavors to remain within the boundaries Congress established. The regulation provides a way for plaintiffs to continue to advance their claims within the administrative process and ultimately to judicial review. Though plaintiffs are not required to refile their appeal request, that is currently their only option. And until they receive a redetermination, they have not exhausted their claims as required by §§ 405(g) and (h). Nor have plaintiffs shown that the path to exhaustion means "no review at all" for their claims.[9] We therefore affirm the district court's conclusion that it lacked jurisdiction to consider these claims.

---

[8]Likewise, plaintiffs do not specifically challenge the Secretary's regulation itself as invalid or contrary to congressional intent. But it is worth noting that under *Chevron v. Natural Res. Def. Council*, the regulation requiring a claimant to request subsequent redeterminations is likely a reasonable interpretation of Congress's requirement that a redetermination must issue before an initial determination can be appealed. 467 U.S. 837 (1984). Under *Chevron*, where the statute is silent or ambiguous on the specific issue (here, whether there should be a way of bypassing the first level of appeal), "the question before the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Given Congress's requirement that redeterminations be made prior to an appeal, and its inclusion of bypass methods for all of the subsequent levels of appeal but not for the first level, the Secretary's regulations merely allowing for subsequent redetermination requests seems to be an eminently reasonable construction of the statute.

[9]We acknowledge that 11 years seems to be an extraordinarily long time to wait for a redetermination, or for some explanation from the Secretary about why the redetermination has taken so long. But we express no opinion on how much longer plaintiffs would have to wait before their futility argument might be sustainable.

## D.  Interest

Plaintiffs next argue that they should be entitled to recover interest on all of their approximately 15,000 claims.[10]  In general, no interest is payable by the federal government except when Congress has expressly authorized it.  *United States v. Louisiana*, 446 U.S. 253, 264-65 (1980).  If Congress has expressly authorized interest, such a limited waiver of sovereign immunity must be "strictly construed . . . in favor of the sovereign." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Plaintiffs rely exclusively on the "clean claims" provision in the Medicare Act as Congress's express authorization of interest in this case.  *See* 42 U.S.C. § 1395u(c)(2)(B) and (C).  That provision states:

> (B)(i) The term 'clean claim' means a claim that has no defect or impropriety (including any lack of any required substantiating documentation) or particular circumstance requiring special treatment that prevents timely payment from being made on this claim under this part.
>
> (ii) The term "applicable number of calendar days" means–
>
> (V) 30 calendar days.
>
> (C) If payment is not issued, mailed, or otherwise transmitted within [30 days] after a clean claim is received, interest shall be paid . . . for the period beginning on the day after the required payment date and ending on the date on which payment is made.

42 U.S.C. § 1395u(c)(2)(B) and (C).

Plaintiffs' basic argument is that among the 6,200 claims that made it through the administrative process and that the Secretary eventually paid, and among the 8,900

---

[10] Plaintiffs' Amended Complaint ambiguously requested "Interest on the unreimbursed claims . . . ." Am. Compl. at 50, Page ID #79, which would seem to include all 15,000 claims.  Their response to defendants' motion to dismiss did not make any argument regarding interest.  Their motion for reconsideration of the remand order reiterated their request for "Interest on the unreimbursed claims." R.49 at 1, Page ID #295.  Yet, they also stated in that motion that they were seeking interest on only the Group 2, 3, and 4 claims.  R. 49 at 4, Page ID #296.  Plaintiffs' response to the district court's proposed summary-judgment order again reiterated their request for interest, but did not specify the claims on which they sought it.  R. 64 at 8, Page ID #403.  In their opening brief to this court, plaintiffs requested interest on all of their claims.  Appellant Br. at 28.

claims that have been ensnared in the administrative process, they had clean claims that were not paid within the 30-day window and thus they are owed interest on those claims. The district court concluded that plaintiffs were not entitled to interest, at least as to the 6,200 claims, and that judgment for the Secretary was appropriate as a matter of law because the Secretary's Medicare Claims Manual states that the clean-claims provision does not apply to claims initially denied and later approved for payment at some level. R. 63-1, Order at 16, Page ID #392. Plaintiffs counter that the Claims Manual's interpretation of the clean-claims provision is completely at odds with the plain language of the statute and thus it was error for the district court to rely on it in granting summary judgment. We agree.[11]

The Manual states that interest payments are not available for clean claims "initially processed to denial and on which payment is made subsequent to the initial decision as a result of an appeal request." Medicare Claims Processing Manual, CMS Publication No. 100-04, Ch. 1; section 80.2.2.1.C. The Manual also states that this applies to appeals where "more than [30 days] elapsed before an initial determination, but the claim was later paid on appeal." *Id.* In other words, even if a provider submits a clean claim that is wrongfully denied outside of the 30-day window, the provider cannot get interest on that claim if the claim was later paid on appeal.

This Manual provision is the Secretary's interpretation of Congress's statutory language. Our review of an agency regulation interpreting a federal statute might typically be under the *Chevron* framework. But, "*Chevron* deference is appropriate only if the Congress has delegated authority to an agency to make rules having the 'force of law' and the agency rule at issue was 'promulgated in the exercise of that authority.'" *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines . . . are beyond the

---

[11]Defendants argue that plaintiffs did not raise this argument below or in briefing to this Court, and because it is only now being raised through amici, we should not consider it. Defendants are not entirely correct. Plaintiffs' briefing here did initially assert the claim that, as related to the clean-claims provision, the Secretary's regulatory "scheme is itself unlawful" because it incentivizes denying claims in the first instance. Appellant Br. at 28. Plaintiffs acknowledged that amici would more fully develop this argument, and accordingly plaintiffs expressly adopted those arguments. Reply Br. at 21. We therefore consider the argument plaintiffs initially raised and that amici more fully developed.

*Chevron* pale."  *Id.* at 234; *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) ("Interpretive rules do not require notice and comment, . . . they also do not have the force and effect of law and are not accorded that weight in the adjudicatory process.").  The Manual is "a prototypical example of an interpretive rule, issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."  *Guernsey Mem'l Hosp.*, 514 U.S. at 99 (discussing a provision in the Medicare Provider Reimbursement Manual) (quotation marks and citation omitted).

While not subject to *Chevron*, the Secretary's interpretation of the statute here is still subject to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Chao v. Occupational Safety and Health Review Comm'n*, 540 F.3d 519, 526-27 (6th Cir. 2008) ("Because the Secretary's interpretation . . . is not the product of notice-and-comment rulemaking, we conclude that the less-deferential *Skidmore* level of review is warranted.").

Under *Skidmore*, our deference to the Secretary's interpretation "'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'"  *Chao*, 540 F.3d at 526 (quoting *Skidmore*, 323 U.S. at 140); *see also Gonzales v. Oregon*, 546 U.S. 243, 269 (2006) ("[U]nder *Skidmore*, we follow an agency's rule only to the extent it is persuasive . . . .").  In deciding whether the Secretary's interpretation is persuasive, "we look to the statute's text and design," *Gonzales*, 546 U.S. at 269, including whether the regulation is "consistent with the congressional purpose."  *Morton v. Ruiz*, 415 U.S. 199, 237 (1974).

Congress placed only two limitations on the payment of interest under the clean-claims provision.  First, the claim must be clean, meaning it has no "defects or improprieties."  42 U.S.C. § 1395u(c)(2)(B)(i).  Second, if the claim is clean, interest is automatically due if the claim is not paid "within [30 days] after the  . . . claim is received."  42 U.S.C. § 1395u(c)(2)(C).  That's it.  There are no further limitations in Congress's express language.  This makes sense given that the purpose of the statute is to incentivize prompt payments.  Section 1395u(c) is titled "Prompt payment of claims."

And the Secretary admits that the clean-claims provision is solely "concerned with promptness in the processing of Medicare claims for payment . . . ." Appellee Br. at 46. Accordingly, Congress clearly encouraged this efficiency through its limited waiver of immunity *requiring* interest payments on any clean claim not paid within 30 days.

The Secretary's Claims Manual, however, places additional limitations on when the Secretary has to pay interest on clean claims. She states that even if the clean claim was initially (and perhaps wrongfully) denied outside of the 30-day window (which would trigger the interest payment under Congress's plain language), no interest is due if the claim is later paid on appeal. Medicare Claims Processing Manual, CMS Publication No. 100-04, Ch. 1; section 80.2.2.1.C. The Secretary's gloss on the statute appears to reverse the incentive to promptly pay claims. Rather than encouraging prompt payment, she incentivizes initially denying claims (even potentially clean claims), and even doing so outside of the 30-day window, because there is absolutely no risk of paying interest if the claim is later paid on appeal. This seems to be completely at odds with the plain language and purposes of the statute. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 588-89 (2000) (holding that agency opinion letter was unpersuasive in part because it could not "overcome the regulation's obvious meaning"); *Gonzales,* 546 U.S. at 922 (holding that Attorney General opinion letter was unpersuasive in part because it was "discordant" with the language of the statute); *Guernsey Mem'l Hosp.*, 514 U.S. at 109 (O'Connor, J., dissenting) ("[The Manual provision] cannot be a valid "interpretation" of the Medicare regulations because it is clearly at odds with the meaning of [the regulation] itself. Thus, I would conclude that the Secretary's refusal, premised upon an application of [the Manual provision], to reimburse the Hospital . . . was invalid.").

The unreasonableness of the Secretary's interpretation is further magnified in the immunity context. The Supreme Court has explained that "just as we should not take it upon ourselves to extend the waiver beyond that which Congress intended, neither . . . should we assume the authority to narrow the waiver that Congress intended." *Idaho ex rel. Dir. Idaho Dept. of Water Res.*, 508 U.S. at 7 (quotation marks, citations, and

alterations omitted).  This same principle applies with equal force to the Secretary's interpretation here.  Congress waived immunity by allowing interest on any clean claims not paid within 30 days.  Period.  The waiver was not conditioned on whether the claim was initially denied and later paid on appeal.  And Congress certainly did not make an exception for initial denials made *outside* of the 30-day period.  The Secretary's interpretation of the statute narrows Congress's waiver and in doing so directly conflicts with the purpose of the statute.  We therefore conclude that her interpretation is unpersuasive and unreasonable.  The district court erred by concluding that the Medicare Claims Manual's interpretation of the clean claims provision was controlling and that on this basis plaintiffs were not entitled to interest as a matter of law.

On summary judgment, it was the Secretary's burden to show that no genuine issue of material fact exists as to plaintiffs' claim for interest.  *Celotex Corp.*, 477 U.S. at 325.  But she cannot rely on her unreasonable interpretation of the clean-claims statute as a basis for summary judgment.  In order to be entitled to summary judgment, she would presumably have to show that plaintiffs' claims were not clean claims denied outside of the 30-day window.  42 U.S.C. § 1395u(c)(2)(C).  On remand, the district court should address whether interest is due on some or all of the 6,200 claims for reimbursement that plaintiffs appropriately brought before the district court.  Any interest due on plaintiffs' 8,900 other claims can be addressed by the Secretary when plaintiffs exhaust those claims.

**IV.**

We **AFFIRM** the district court's decision granting summary judgment to defendants on plaintiffs' federal and state law claims and on the 8,900 claims still in the administrative process, but we **REVERSE** its decision granting summary judgment on plaintiffs' claims for interest and **REMAND** for further proceedings consistent with this opinion.