STRANCH, Circuit Judge,
dissenting.
This case presents the question of whether manufactured homes are consumer products covered by the MagnusonMoss Warranty Act (MMWA). 15 U.S.C. §§ 2301-2312. This is not an easy ques *517 tion in the ever-changing world of home construction, particularly in light of the group of similar but differently named products that includes mobile homes, manufactured homes, and modular homes. The majority finds jurisdiction to be lacking on the basis that plaintiffs’ home has sufficient permanence to be excluded from the MMWA. While it is true that the MMWA applies only to warranties for “tangible personal property,” 15 U.S.C. § 2301(1), the Act makes clear that it includes property that would be designated under many state-law regimes as real-property fixtures. In light of the uncertainty this creates, I would opt for the virtue of predictability. I would adopt the categorical approach of the governing regulatory agencies, the Federal Trade Commission and Department of Housing and Urban Development, and distinguish MMWA coverage based on the regulatory regime to which the home is subject or to which the manufacturer has chosen to subject it. I therefore respectfully dissent.
The MMWA was created “(1) to make warranties on consumer products more readily understood and • enforceable, (2) [and] to provide the Federal Trade Commission (FTC) with means of better protecting consumers....” House Report No. 93-1107 on the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act June 13, 1974. The Act achieves these purposes by providing a remedy for certain warranty breaches related to “consumer products.” 15 U.S.C. § 2301(1); Gentek Bldg. Products, Inc. v. SherwinWilliams Co., 491 F.3d 320, 323-324 (6th Cir.2007). It defines “consumer products” as
any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed).
15 U.S.C. § 2301(1).[1]
Some background is helpful before deciding whether the Bennetts’ home falls into the category of “consumer products”: Federal and state law establishes three main categories of homes that are relevant in the present case: manufactured homes, modular homes, and stick-built (or site-built) homes. Stick-built homes are built using traditional construction techniques, largely on the final home site. As the majority notes, such homes were not intended to fall within the purview of the MMWA.
Until the late 1970’s, manufactured homes were generally called “mobile homes.” The term “mobile home” was used in federal legislation in the National Housing Act, 12 U.S.C. §§ 1701, 1715z, the United States Housing Act of 1937, 42 .U.S.C. § 1437, and the Housing and Community Development Act of 1974, 42 U.S.C. § 5401. For example, the Housing and Community Development Act of 1974 defined mobile home as
a structure, transportable in one or more sections, which is eight body feet or more in width and is thirty-two body feet or more in length, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the *518 plumbing, heating, air-conditioning, and electrical systems contained therein;
42 U.S.C. § 5402(6) (1974).
Many are not built to be actually mobile, however. See Molly A. Sellman, Manufactured Housing: The Invalidity of the ‘Mobility’ Standard, 19 Urb. Law. 367, 374 (1987). Their mobility is defined by the fact that they are built at a factory and transported, via a built-in chassis, wheels, and axle, to a person’s property where they will be affixed and never moved again. Id. In response to a negative stigma against “mobile homes,” the industry responded by coining the term “manufactured home” that — though naming the same product — was intended to impart a better impression.
The “manufactured-home” terminology has thoroughly replaced “mobile home” in federal and Tennessee law. In 1980, Congress amended federal housing laws. In doing so, the three acts identified above were amended by striking out “mobile home” each place it appears and inserting in lieu thereof “manufactured home.” Housing and Community Development Act of 1980, Pub.L. No. 96-399, § 308, 94 Stat 1614 (1980). The amendment changed the definition of manufactured homes to cover larger homes, as well as any building that meets all the requirements to be considered a manufactured home except the size requirements and that is built to the manufactured home building code established by the Secretary of Housing and Urban Development. Id. at § 308(d)(B). Thus, under federal law, manufactured homes literally became mobile homes under a different name. Tennessee also simply replaced the term “mobile home” with “manufactured home” in its regulations. See Tenn.Code § 68-126-202(2) & (4) (providing that the structure is a “mobile home” if built before June 15, 1976 and a “manufactured home” if built after June 15, 1976). The Tennessee Court of Appeals has found the difference between a “mobile home” and a “manufactured home” a “difference without a distinction.” Beacon Hills Homeowners Assn., Inc. v. Palmer Props., Inc., 911 S.W.2d 736, 738 (Tenn.Ct.App. 1995).
At the same time that mobile homes were becoming manufactured homes, the homebuilding industry also began to develop “modular” approaches to homebuilding. Like manufactured homes, a modular home is largely manufactured somewhere away from the eventual home site and brought to the local home site for installation. Under Tennessee law, a “Modular building unit” is “a structural unit, or preassembled component unit, including the necessary electrical, plumbing, heating, ventilating and other service systems, manufactured off-site and transported to the point of use for installation or erection, with or "without other specified components, as a finished building.” TenmCode § 68-126-303(8). As may be apparent from this definition, modular building units could include homes that also meet the definition of manufactured homes.
The primary difference between a modular home and a manufactured home is the form of regulation to which the home is subject. Manufactured homes are federally regulated, pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. § 5401 et seq. Under this Act, the United States Department of Housing and Urban Development (HUD) has developed standards and inspection mechanisms for manufactured housing, called the HUD code. See 24 C.F.R. § 3280.1 et seq. and § 3282.1 et seq. Modular homes, on the other hand, are subject to state or local building codes, either those that are applicable to stick-built houses or specific building codes designated by state law. See *519 Tenn.Code § 68-126-301 et seq. (Tennessee Modular Building Act); Tenn. Comp. R. & Regs. 0780-02-13.02 (naming the applicable building codes for modular homes in Tennessee). If a manufactured home will be erected or installed only on a “site-built permanent foundation,” the manufacturer may choose whether to certify the home under the HUD code, in which case it is treated as a manufactured home, or under the relevant state-law building codes, in which case it is treated as a modular home. 24 C.F.R. § 3282.12. The record shows that the Bennetts’ home was categorized as a manufactured home, subject to the HUD codes. See R. 63-2 at Page ID 426.
Returning to the MMWA, I begin by noting that both the Federal Trade Commission (FTC), which administers the Act, and HUD have concluded that manufactured (or mobile) homes are consumer products for the purposes of the Act. In 1975, the FTC issued the Magnuson-Moss Warranty Act Implementation and Enforcement Policy which specifically defined mobile homes as a consumer product covered by the MMWA. 40 Fed.Reg. 25,721, 25,722 (1975) (“Consumer product as defined in the Act includes the following items, and any other items that are tangible personal property and are normally used for personal, family, or household purposes: boats ... motor homes, automobiles, mobile homes.... ” (emphasis added)). In part, this conclusion appears to have been grounded in the statutory text which “includes products which are normally intended to be, or which are at the time of sale, fixtures to real property” in the definition of consumer products. Id.; see 15 U.S.C. § 2301(1). The FTC later articulated its general approach to defining consumer products in an interpretive rule: ‘Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.” 16 C.F.R. § 700.1(a). HUD likewise concluded that the Act applies to manufactured homes. In its 1996 “Manufactured Home Consumer Manual Guide” (that is, a guide to manufacturers on how to write consumer manuals), the Department instructed manufacturers that any written warranties included in a consumer manual had to be compliant with the MMWA. 61 Fed.Reg. 10,858, 10,864 (1996).
In contrast to mobile homes, the FTC found no MMWA coverage for modular homes. In 1977, the FTC issued an Advisory Opinion determined that modular homes do not qualify as consumer products for the purposes of the MMWA. 42 Fed. Reg. 37,440, 37,440-41. In the opinion, the FTC reiterated that mobile homes qualify as consumer products under MMWA and differentiated modular homes on the basis that they are regulated by modular-home specific building codes — a list of which were included in the appendix of the opinion — or are built according to state building codes for modular homes. Id. The appendix list did not include the HUD code, which governs manufactured homes.
None of the administrative pronouncements described above were promulgated in exercise of the FTC’s or HUD’s authority to make rules carrying the force of law, so Chevron deference does not apply. “[I]interpretations contained in formats such las opinion letters are ‘entitled to respect’ under [the] decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the ‘power to persuade.’ ” Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The Fifth Circuit, moreover, has stated that “because the FTC is vested with various rule-making authority under the MMWA, its views concerning the scope of the MMWA *520 would be entitled to great weight.” Boelens v. Redman Homes, Inc., 748 F.2d 1058,1063 n. 6 (5th Cir.1984).
In deciding whether the interpretation is persuasive, this court examines the “ ‘thoroughness evident in [the interpretation’s] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements.’ ” OfficeMax, Inc. v. United States, 428 F.3d 583, 595 (6th Cir.2005) (quoting United States v. Mead Corp., 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). In assessing the validity of its reasoning, we look “to the statute’s text and design, including whether the regulation is ‘consistent with the congressional purpose.’ ” Southern Rehabilitation Grp., P.L.L.C. v. Sec’y of HHS, 732 F.3d 670, 685 (6th Cir.2013) (internal citations and quotation marks omitted). As the Seventh Circuit has recognized, the FTC regulations were reached after thorough consideration, including, for some, a notice-and-comment process that was not required by the Administrative Procedure Act, and the agency “has adhered to its interpretive positions consistently since the 1970s.” Miller v. Herman, 600 F.3d 726, 734 (7th Cir.2010).
The agencies’ interpretation is also consistent with the text and legislative intent of the MMWA. As the majority notes, Representative Moss stated in a colloquy concerning the MMWA that houses would not fall within the Act’s definition of “consumer product.” See 120 Cong. Rec. 30,-171, 31,323. In the same hearing, Representative Moss introduced an investigatory report that the committee staff had compiled, revealing problematic warranty terms in a range of consumer products; that report included mobile homes as one of the categories of products examined. See 120 Cong. Rec. 30,171, 31,317. As noted above, those products that were categorized as mobile homes in 1974, when the Act was being debated, are now categorized as manufactured homes under federal law.
Two aspects of the structure of the MMWA definition further support the FTC’s and HUD’s interpretation. First, the definition explicitly includes those products that would otherwise be considered fixtures, such as furnaces, garbage disposals, and the like. Whether a product is permanently installed in real property, therefore, does not resolve the question of whether that product is a “consumer product” under the MMWA. Second, the Act favors categorical approaches to determining whether a certain product is a “consumer product.” A frequent issue with regard to the definition is whether a product is for consumers or for commercial use. The Act follows a categorical approach to this question, including in the definition property “which is normally used for personal, family, or household purposes,” regardless of whether the particular property at issue in a given case was actually used for such purposes. 15 U.S.C. § 2301(1). Comparably, rather than determine, for any given mobile home, how permanently it was installed and how large it was, the FTC followed a categorical rule: if the home is subject to federal regulation, it is personal property and subject to the MMWA, and if the home is subject to state building codes (like other, stick-built houses), it is real property and falls outside the scope of the Act. The FTC’s choice to use a similar categorical approach to distinguish the products before us is therefore sensible.
For the above reasons, grounded in the structure and legislative history of the MMWA, I would find the FTC’s and HUD’s interpretations to be persuasive. However, there is another reason, apart from the persuasiveness of the interpretations, which would lead me to include the *521 Bennetts’ home within the “consumer products” definition. It appears that “The Georgetown” model of homes may have been sufficiently permanent that CMH could have classified them as modular homes and sought approval under state building codes, rather than under the federal HUD code. In light of the longstanding FTC and HUD interpretations regarding the MMWA, when CMH made the decision to classify the home as a manufactured home, it likely did so with an expectation that the MMWA would apply. To the extent that application of the MMWA would operate to the benefit of CMH, the company has a reliance interest in that application, and to the extent that it would operate to the company’s detriment, estoppel principles would counsel against giving the company the benefit of exclusion.
For all of these reasons, I would hold that federal courts have jurisdiction under the MMWA and may consider the merits of this case. I therefore respectfully dissent.

. Cf. Tenn.Code § 67-5-501(9)(A) (defining "real property” to include fixtures). See also Tenn. Comp. R. & Regs. 1320-5-l-.27(2) & Tenn. Dept, of Rev. Priv. Ltr. Rui. 05-11 (June 8, 2005) (both noting that there is no sales and use tax on tangible personal property which becomes a fixture; such property is taxed as real property).