SOUTHERN REHABILITATION GROUP, P.L.L.C. dba Occupational, Alternative & Rehabilitative Services, P.C., and James P. Little, M.D.

v.

Kathleen SEBELIUS, Secretary of the United States Department of Health and Human Services; Cigna Government Services, LLC; Cigna Healthcare of Tennessee, Inc.; Computer Sciences Corporation dba Advancemed; and Q2 Administrators, LLC.

No. 2:09–CV–226.

United States District Court,
E.D. Tennessee,
at Greeneville.

July 2, 2012.

Wynne DuMariau Caffey, Ramsey, Elmore, Stone and Caffey PLLC, Knoxville, TN, for Plaintiff.

Robert C McConkey, III, U.S. Department of Justice (Knox USAO), Office of U.S. Attorney, Knoxville, TN, for Defendant.

### ORDER

J. RONNIE GREER, District Judge.

On May 21, 2012, the Court provided the parties notice that it intended to convert defendants' Motion to Dismiss Amended Complaint in Part into a Motion for Summary Judgment. [Doc. 63]. A copy of the Proposed Order was attached to this notice. [Doc. 63–1]. Plaintiffs were given fourteen (14) days to show cause why summary judgment was not warranted and to provide evidence creating a genuine issue of material fact. Plaintiffs timely responded by filing a brief and requesting oral argument,[1] but submitted no additional evidence. [Doc. 64]. Defendants subsequently filed a reply. [Doc. 65]. The matter is now ripe for adjudication.

After carefully reviewing plaintiffs' brief in response, the Court finds that it is essentially a reiteration of arguments previously made on brief. Having already considered and addressed such arguments in the Proposed Order of May 21, 2012, the Court sees no reason to retreat from the Proposed Order. Consequently, the Court hereby ADOPTS its Proposed Order of May 21, 2012. [Doc. 63–1]. Accordingly, defendants' Motion to Dismiss Amended Complaint in Part [Doc. 23], as converted by the Court into a Motion for Summary Judgement, is hereby GRANTED, and the Amended Complaint is hereby DISMISSED.

### ORDER

Plaintiffs Southern Rehabilitation Group ("SRG") and James P. Little, M.D., bring this action against defendants Kathleen Sebelius ("the Secretary"), Cigna Government Services, LLC ("Cigna"), Computer Sciences Corporation, and Q2 Administrators, LLC, alleging fraud and other wrongful misconduct in the processing of their claims to reimbursements under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Medicare Act" or "Act"). Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants move the Court for an Order dismissing the Amended Complaint, in part, for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted [Doc. 23].

### I. FACTUAL AND PROCEDURAL HISTORY

Since June 2001, plaintiffs have provided inpatient rehabilitation healthcare services at Healthsouth Rehabilitation Hospital in Kingsport, Tennessee. Approximately 70% of plaintiffs' patients are covered by Medicare, and plaintiffs generate approximately 10,000 Medicare claims per year. Plaintiffs billed the services at issue to Part B Medicare contractor/fiscal intermediary Cigna. In their Amended Complaint, plaintiffs take issue with the way Cigna and the other defendants handled certain groups of claims, claiming that such claims were fraudulently and/or im-

---

1. Plaintiffs' request for oral argument is hereby DENIED.

properly downcoded [1] or denied. Plaintiffs identify four separate groups of claims in which this downcoding and/or denial occurred. "Group 1" encompasses up to 8,900 claims totaling approximately $365,000 in outstanding Medicare allowable services, with dates of service between 2001 and 2002, that plaintiffs allegedly appealed to Cigna on September 6, 2002. To date, plaintiffs claim they have not heard back regarding the outcome of this appeal. "Group 2," "Group 3," and "Group 4" claims are comprised of Medicare allowable services totaling $107,171.07. With respect to Groups 3 and 4, plaintiffs claim that a final decision which was not fully favorable was rendered by the Medicare Appeals Council on August 14, 2009, but that it should be overturned because it was not based on substantial evidence. Plaintiffs claim that the Group 2 claims were appealed along with, and under the same administrative appeal number, as the Group 3 and 4 claims-however, plaintiffs claim that neither the administrative law judge nor the Medicare Appeals Council addressed these claims in their final decisions.

Plaintiffs assert a number of Counts in their Amended Complaint. Count I alleges that the Secretary's factual findings were not based on substantial evidence and must be overturned; Count II alleges statutory violations; Count III alleges defendants violated the constitutional rights of plaintiffs; and Counts IV–IX allege negligence and various other state law causes of action. In addition to seeking reimbursement for services rendered, Plaintiffs seek interest on the unreimbursed claims, as well as injunctive relief and consequential damages in the amount of $1,963,990.00.

On October 13, 2011, the Secretary filed a Motion for Partial Remand [Doc. 46] on Counts I and II pursuant to sentence six of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides, "The court may, on motion of the Commissioner for good cause shown ... remand the case to the Commissioner for further action by the Commissioner...." The plaintiffs argued that the Court should deny such motion on the grounds that it was nothing more than a ploy to pay them as little as possible so as to get the case dismissed [See Doc. 49]. By Order dated October 18, 2011 [Doc. 47], the Court granted the Secretary's Motion for Partial Remand. On March 6, 2012, the Secretary notified the Court that, on remand, the defendants agreed to pay the plaintiffs the full amount in dispute for those claims in Group 2, Group 3, and Group 4. This amount, totaling $107,171.07, was paid to Plaintiffs on February 24, 2012 [See Doc. 62]. In light of the foregoing, it is now defendants' position that the plaintiffs have received everything they could possibly be entitled to under the Medicare Act [Doc. 61 at 2]. The plaintiffs disagree, arguing that they are entitled to further relief [Doc. 49 at 3]. In light of the Secretary's recent notice filing, and in the interest of judicial economy, the Court *sua sponte* converts the instant Motion to Dismiss in Part into a motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and

---

**1.** Downcoding refers to a practice of third-party payers in which the billing/benefits code has been changed to a less complex or lower cost procedure than was reported.

all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322, 106 S.Ct. 2548. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248–52, 106 S.Ct. 2505.

### III. ANALYSIS

#### a. *The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' State Law Claims (Counts IV–IX).*

■ The specific jurisdictional basis for judicial review of a final decision of the Secretary on a Medicare Part B claim is articulated at 42 U.S.C. § 1395ff(b)(1)(A). This provision states that "any individual dissatisfied ... shall be entitled to ... judicial review of the Secretary's final decision after [a] hearing as is provided in section 405(g) of this title." The referenced "section 405(g)" is the fundamental judicial review provision of the Social Security Act. The text of section 405(g) states, in pertinent part:

Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision ...

Under 42 U.S.C. § 405(h),[2] made applicable to the Medicare Act by 42 U.S.C.

---

**2.** 42 U.S.C. § 405(h) provides, "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331

§ 1395ii, it is clear that section 405(g) "is the sole avenue for judicial review of all 'claims arising under' the Medicare Act." *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). A claim arises under the Medicare Act if it is "inextricably intertwined" with a benefits determinations under the Medicare Act. *Id.* at 622–24, 104 S.Ct. 2013. In *Ringer,* Medicare claimants mounted a statutory and constitutional challenge to the Secretary of Health and Human Service's final decision prohibiting reimbursement for bilateral carotid body resection ("BCBR") claims. Although the claimants styled their challenge as a claim based upon the Medicare Act, the Administrative Procedure Act, and the Due Process Clause, the Court noted that the plaintiffs' complaint was, "at. bottom, a claim that they should be paid for their BCBR surgery." *Id.* at 614, 104 S.Ct. 2013. As such, the Court concluded that the claim was inextricably intertwined with the claim for benefits and was therefore barred by section 405(h).

Plaintiffs concede that all of their claims are "inextricably intertwined with· their claims for payment" [Doc. 56 at 16]. *See also* Doc. 56 at 19 ("Because all of Plaintiffs' contentions are inextricably intertwined with their action, the District Court has adequate authority to decide [them]"). Notwithstanding this concession, plaintiffs argue that their various state law claims and constitutional claims are properly before the Court on the ground that they have properly exhausted their administrative remedies. Because they have exhausted their administrative remedies, plaintiffs argue, the law permits them to litigate all of their claims before the Court.

Plaintiffs are mistaken. Instructive is the case of *Bodimetric Health Services, Inc. v. Aetna Life & Casualty,* 903 F.2d 480, 482 (7th Cir.1990), in which the litigants' Medicare claims, which had been denied by the Medicare contractor, were approved for payment during the administrative appeals process. However, the litigants wanted more: they believed that the Medicare contractor's behavior had destroyed their health care business, and that their eventual successful outcomes in their Medicare appeals were insufficient recompense for the wrongs they had suffered. *See id.,* at 483. The appellate court, however, ruled that "Congress expressly limited the remedies that can be sought by dissatisfied claimants," and that "[w]hile this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement...." *Id.* at 490.

Also instructive is the case of *Regional Medical Transport, Inc. v. Highmark, Inc.,* 541 F.Supp.2d 718 (E.D.Pa.2008).[3] There, the court concluded that claims for consequential damages resulting from adverse decisions by Medicare carriers are "inextricably intertwined" with claims for benefits and, thus, must be litigated via the administrative process provided for in the Act. Regarding this process, the court stated:

> To the extent that plaintiffs have obtained the relief sought in those proceedings, plaintiffs are limited to that recovery and cannot obtain more than permitted by the Medicare program by couching their claims as state law challenges. To the extent that plaintiffs are aggrieved by the results of the adminis-

---

or 1346 of Title 28 to recover on any claim arising under this subchapter."

**3.** It is worth noting that the plaintiffs in *Regional Medical Transport, Inc.,* just as in the

instant case, had litigated at least a portion of their claims to the point where the Secretary had rendered a final decision regarding them. *Id.* at 722.

trative review process, the proper—and only—recourse available is an appeal of the Secretary's "final decision" in accordance with § 405(g) and the Medicare regulations. *Thus, irrespective of what relief plaintiffs actually obtained in the administrative process, § 405(h) bars judicial review of plaintiffs' state law tort claims,* all of which are "inextricably intertwined" with claims for Medicare benefits.

*Id.* at 729 (emphasis added).

For the foregoing reasons, the Court concludes that it lacks subject matter jurisdiction over plaintiffs' state law claims (Counts IV–IX).

**b.** ***The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Constitutional Claims (Count III).***

■ Plaintiffs contend in their Amended Complaint that defendants violated their right to due process and equal protection by, *inter alia,* undervaluing their services and arbitrarily and capriciously applying the Medicare Act and pertinent regulations. [Doc. 7 at 37–39]. However, as noted, *supra,* plaintiffs' concede that all of their claims are "inextricably intertwined with their claims for payment." [Doc. 56 at 16]. Consequently, the Court lacks subject matter jurisdiction over plaintiffs' constitutional claims. *See Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (Holding that claimants' supposed constitutional and procedural objections were "inextricably intertwined" with their underlying request for benefits, such that their claims had to channeled through the administrative review process).

Notwithstanding the foregoing, plaintiffs argue that the Court has subject matter jurisdiction to consider their constitutional claims because plaintiffs have successfully channeled some of their claims through the administrative process. Plaintiffs are again mistaken. In-

structive on this point is the case of *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). The plaintiffs in *Chilicky* were three individuals whose Social Security disability benefits were improperly terminated. Two of these plaintiffs had appealed these improper terminations through the administrative appeals process and received a final decision in their favor. Notwithstanding these favorable determinations issued by the Secretary, these plaintiffs decided to sue in federal court alleging that their due process rights had been violated and that the mere reinstatement of their benefits was not adequate compensation under such circumstances. In considering whether a remedy for constitutional torts should be implied for alleged due process violations in the denial of social security benefits, the Supreme Court answered in the negative, stating, "In light of the comprehensive statutory schemes involved, the harm resulting from the alleged constitutional violation can in neither case be separated from the harm resulting from the denial of the statutory right [to benefits]." *Id.* at 428, 108 S.Ct. 2460. The same logic is applicable in the instant case. Consequently, the Court concludes that it lacks subject matter jurisdiction over plaintiffs' constitutional claims (Count III).

**c.** ***The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Request for Injunctive Relief.***

■ Plaintiffs seek injunctive relief in the following respects: (1) that the Secretary revise the Medicare coding guidelines, and (2) that the Secretary train reviewers in the proper method of applying Medicare's payment guidelines and documentation requirements as they apply to rehabilitative services. [Doc. 7 at 52–53]. Such relief is unavailable in this litigation.

■ The Supreme Court has made clear that when claims arise under the Social Security Act which have at their core a challenge to a decision made regarding benefits, they may be raised under § 405(g) alone, even if they raise constitutional challenges and regardless of the relief sought. There simply is no other source of federal subject matter jurisdiction for such claims. *Weinberger v. Salfi*, 422 U.S. 749, 757–62, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See also Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (the *Salfi* holding, and the exclusive jurisdiction of § 405(g), govern regardless of whether the claim is substantive or procedural and whether the claimant seeks an award of benefits or only declaratory and/or injunctive relief); *Mathews v. Eldridge*, 424 U.S. 319, 327–28, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (making clear that *Salfi*'s holding applies even when the plaintiff seeks to challenge the procedures by which benefits were denied). Thus, when a claimant seeks judicial review of the Secretary's final benefits decision, the sole basis for federal subject matter jurisdiction is § 405(g). This is fatal to plaintiff's request for injunctive relief because § 405(g) only accords authority to affirm, modify, or reverse a decision of the Secretary. "It contains no suggestion that a reviewing court is empowered to enter an injunctive decree whose operation reaches beyond the particular applicants before the court." *Salfi*, 422 U.S. at 763 n. 8, 95 S.Ct. 2457. Therefore, the Court lacks subject matter jurisdiction over plaintiffs' request for injunctive relief.

### d. *The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Relating to Group 1.*

■ Plaintiffs concede that, with regard to their Group 1 claims, they did not pursue such claims to the point of receiving a "final decision" by the Secretary, in accordance with § 405(g) and the Medicare Regulations. [Doc. 56 at 15–16]. Plaintiffs allege that they timely requested review from Cigna for the Group 1 claims, but that Cigna never issued them a determination. Consequently, plaintiffs argue that they were unable to appeal these claims to the next level in the administrative process. Plaintiffs also allege that channeling the Group 1 claims through the administrative process would be overly time consuming and, consequently, that the Court should "waive" the requirement imposed by 42 U.S.C. § 405(g) that requires plaintiffs to receive a final decision from the Secretary prior to seeking judicial review. [Doc. 56 at 13, 15].

Turning first to plaintiffs' contention that Cigna's inaction prevented them from completing the administrative appeals process: while the Court can appreciate the frustration that plaintiffs must have felt when they submitted the required Group 1 billing paperwork to Cigna and never heard back, this does not excuse them from the requirement that they exhaust their administrative remedies. Pursuant to the federal regulations that governed Medicare Part B appeals in 2002, an entity dissatisfied with an initial determination in which a carrier denied a Medicare claim had a right to "request that the carrier review such determination." 42 C.F.R. § 405.807(a) (2002). If the carrier failed to issue a review determination with reasonable promptness, i.e., within sixty (60) days, *id.* § 405.802, the recourse for the party seeking review was to request a hearing before a carrier hearing officer. *Id.* §§ 405.801, 405.821(c). In other words, the plaintiffs' recourse in the situation they describe was simply to proceed to invoke the next step of the Medicare administrative appeals process. Evidently plaintiffs did not do this, and such failure does not excuse them from the requirement that

they exhaust their administrative remedies before seeking judicial review.

The Court also finds equally unavailing plaintiffs' request that the Court waive the requirement for a final decision with respect to the Group 1 claims. While waiver of the Medicare Act's administrative exhaustion requirement is permitted in limited circumstances, *see, e.g., Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (employing a two factor test that asks whether the issue is "entirely collateral to [a] substantive claim of entitlement" and whether a showing has been made that "irreparable injury" will result), suffice it to say that such circumstances clearly do not present themselves here.

The reasons for channeling cases such as the one at bar through the administrative process first are simple. As the Supreme Court has stated,

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have the opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Put another way: the Court, an entity with no medical training or expertise, is not in the best position to review *de novo* the approximately 8,900 claims which comprise Group 1. However, the Secretary and her delegees are in such a position. Consequently, to the extent that plaintiffs seek payment on the Group 1 claims, § 405(h) precludes the Court from reviewing such claims until they are exhausted in accordance with the Medicare Act. *See Regional Medical Transport, Inc.,* 541 F.Supp.2d at 729. As such, the Court concludes that it lacks subject matter jurisdiction over plaintiffs' claim for payment on the Group 1 claims.

### e. *Plaintiffs' Challenge to the Secretary's Final Determination (Groups 2–4) is Moot.*

■ In accordance with § 405(g) and § 405(h), a prerequisite to the Court exercising jurisdiction is that the Medicare system has made a determination adverse to the claimant. *Weinberger v. Salfi,* 422 U.S. 749, 758 n. 6, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Marsaw v. Thompson,* 133 Fed.Appx. 946, 948 (2005). With respect to the disputed claims for Groups 2–4, the Record indicates that the Secretary recently paid the plaintiffs the difference between the rate of payment that plaintiffs received from the Medicare Appeals Council in August 2009, and the rate of payment at the level sought on those claims in plaintiffs' Amended Complaint. Such payment amounts to $107,171.07. [Doc. 62]. Because plaintiffs have now received precisely the Medicare payments they claim were wrongfully denied, and the statute entitles them to no other relief, their suit is moot. *See Salfi,* 422 U.S. at 758 n. 6, 95 S.Ct. 2457 ("Once the application [for benefits] is filed, it is either approved, *in which event any suit for benefits would be mooted,* or it is denied.") (emphasis added). *See also Marsaw,* 133 Fed.Appx. at 948.

### f. *Plaintiffs' Are Not Entitled to Interest.*

■ Plaintiffs claim that, at the minimum, they are entitled to interest on the $107,171.07. Such is not the case.

No interest is payable by the Federal Government except where Congress has expressly authorized it. *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Medicare is a statutory program, which administers federal funds and which is subject to the exclusive remedial scheme set out in the

Medicare Act itself. The Medicare statute contains no authorization for the interest payment plaintiffs seek.

Plaintiffs apparently rely upon the "clean claims" provision of the Medicare statute, at 42 U.S.C. § 1395u(c)(2)(C). [*See* Doc. 49 at 2]. The "clean claims" provision is concerned with the promptness of Medicare claims processing, and provides for payment of interest when "clean claims" are not processed on a timely basis. *Id.*; *see* 42 C.F.R. § 405.922 (interest on clean claims payable when initial claim determination is not made promptly). The "clean claims" provision does not apply to a situation in which a Medicare claim, initially denied by the Medicare program, subsequently gets approved for payment at some level of the Medicare claims appeals process. The Medicare Claims Manual makes this point explicitly:

> Interest payments are not payable on clean claims initially processed to denial and on which payment is made subsequent to the initial decision as a result of an appeal request. This applies to appeals where more than the applicable number of days elapsed before an initial determination, but the claim was later paid upon appeal.

Medicare Claims Processing Manual, CMS Publication No. 100–04, Ch. 1 ("General Billing Requirements"), § 80.2.2.1.C—("Interest Payment on Clean ... Claims Not Paid Timely [:] Determining and Paying Interest [:] Claims Paid Upon Appeal").

Furthermore, where Congress has intended to authorize the payment of interest in the event of a favorable outcome obtained in a Medicare appeal, Congress has done so. Congress has authorized the payment of interest in a few, very limited circumstances in which payment is obtained through a successful Medicare reimbursement appeal. *See, e.g.,* 42 U.S.C. § 1395*oo*(f)(1) (providing for interest on

claims that are denied by the Provider Reimbursement Review Board, but allowed in a subsequent judicial challenge); 42 U.S.C. § 1395ff(b)(2)(A) (providing for interest when Medicare Appeals Council grants appellant "expedited access to judicial review" because the Medicare Appeals Council "does not have the authority to decide the question of law or regulation relevant to the matter in controversy and ... there is no material issue of fact in dispute").

The above-referenced limited circumstances do not apply to the instant case. To the contrary, the instant matter proceeded as a customary Medicare claims appeal, in which the Medicare Appeals Council evaluated abundant factual evidence in order to determine whether plaintiffs' Medicare claims satisfied the criteria for payment at the level plaintiffs contended they were due and then rendered a substantive final agency decision on the merits of the case. In such a case, Congress has not authorized the payment of interest. *See, e.g., Lifeline Ambulance Serv., Inc. v. Leavitt,* 2006 WL 626177 at *5 n. 6 (W.D.Va. March 13, 2006) ("[c]ontrary to Lifeline's assertions, neither would Lifeline be entitled to interest on any Medicare payments in connection to its claims even were it to otherwise prevail in this action. *See* 42 U.S.C. 1395ff (no provisions in statute for interest)").

In light of the foregoing, it is clear that plaintiffs are not entitled to interest on the $107,171.07 paid by the Secretary on remand.

## IV. CONCLUSION

For the foregoing reasons, it is clear that plaintiffs cannot prevail against the defendants on Counts III–IX. To the extent that plaintiffs have made a viable claim for payment pursuant to Counts I–II, defendants have effectuated such pay-

ment, rendering such claim MOOT. In light of the foregoing, the Court concludes as a matter of law that it lacks subject matter jurisdiction to provide plaintiffs any relief beyond that which they have already received. Consequently, defendants' Motion to Dismiss Amended Complaint in Part [Doc. 23], as converted by the Court into a Motion for Summary Judgment, is hereby GRANTED, and the Amended Complaint is hereby DISMISSED.