NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0037n.06

Case No. 15-6307

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 18, 2017
DEBORAH S. HUNT, Clerk

SOUTHERN REHABILITATION GROUP,           )
P.L.L.C., d/b/a Occupational Alternative &           )
Rehabilitative Services, P.C., and JAMES P.           )
LITTLE, M.D.,           )           ON   APPEAL   FROM   THE
           )           UNITED   STATES   DISTRICT
      Plaintiffs-Appellants,           )           COURT   FOR   THE   EASTERN
           )           DISTRICT OF TENNESSEE
v.           )
           )
SYLVIA M. BURWELL, Secretary of the United           )
States Department of Health and Human Services,           )
           )
      Defendant-Appellee.           )

O P I N I O N

BEFORE:  BOGGS and McKEAGUE, Circuit Judges; and BECKWITH, District Judge.[*]

McKEAGUE, Circuit Judge.  Southern Rehabilitation Group, P.L.L.C. and Dr. James

Little brought this civil action to recover interest payments on Medicare claims voluntarily paid

by the Secretary of the Department of Health and Human Services.  On remand following an

initial appeal, the district court held that the plaintiffs were not entitled to interest on the claims

because the claims were not "clean" as required by the provision of the Medicare Act that

authorizes interest payments.  Accordingly, the court granted summary judgment to defendants.

---

[*] The Honorable Sandra S. Beckwith, United States District Judge for the Southern
District of Ohio, sitting by designation.

Because the district court's decision correctly applied the Medicare Act provision, and because the court did not commit any other error, we affirm.

**I**

This is the second appeal in this matter. *See S. Rehab. Grp v. Sec'y of HHS,* 732 F.3d 670, 672–76 (6th Cir. 2013). Although the dispute spans at least fifteen years, we begin with only that background relevant to the immediate appeal.

In 2001, Dr. James Little became the medical director of Southern Rehabilitation Group, P.L.L.C. Collectively, the provider generated approximately 10,000 Medicare claims per year, representing 70% of its patients. Relevant here are some 6,200 such claims, generated between 2001 and 2006. All of these claims were initially sent to a Medicare contractor, CIGNA, responsible for review and payment.

During the same period, plaintiffs were under a Progressive Corrective Action plan, which led CIGNA to order "prepayment medical review" on 100% of the claims. The prepayment review was conducted by a subcontractor. Prepayment medical review involves a contractor individually evaluating claims for errors or discrepancies and may require the provider to submit additional documentation, if necessary. *See* Medicare Program Integrity Manual, CMS Pub. #100-08, Ch. 3, §§ 3.2.3.1, 3.2.3.2.

During prepayment review, the subcontractor denied or down-coded many of the claims. A complex series of administrative proceedings followed as plaintiffs challenged these determinations. The relevant claims here are those 6,200 claims which remained unpaid or down-coded when the administrative review process had been exhausted. *See S. Rehab. Grp.*, 732 F.3d at 684. Following administrative review, plaintiffs asserted they were still owed $107,171.07 on those claims. *Id.*

Accordingly, plaintiffs filed this civil action against the Secretary of the United States Department of Health and Human Services, in part seeking judicial review of the final agency decision and reimbursement for the 6,200 claims under 42 U.S.C. § 1395ff(b)(1).[1] *See S. Rehab. Grp.*, 732 F. 3d at 674. Initially, the Secretary moved to dismiss, but followed this with a motion for partial remand on the 6,200 claims in order to voluntarily pay plaintiffs the $107,171.07 then in dispute on those claims. *S. Rehab. Grp.*, 732 F. 3d at 674–75. The plaintiffs responded by arguing that the proposed payment was insufficient because it did not include interest and improperly relieved the Secretary of responsibility for filing the related administrative record. The district court granted the motion and the Secretary paid the plaintiffs the amount they had originally demanded on the claims—but no interest.

Following this payment, the district court entered judgment for defendants on the remaining claims. In its opinion, the district court dismissed the claims for payment on the 6,200 claims as moot and denied plaintiffs' request for interest payments because, according to the Medicare Claims Manual, interest payments were not authorized on claims initially processed to denial. *S. Rehab. Grp., P.L.L.C. v. Sebelius*, 874 F. Supp. 2d 733, 742 (E.D. Tenn. 2012). Plaintiffs timely appealed. *S. Rehab. Grp.,* 732 F.3d at 676. On appeal, in relevant part, this court considered whether plaintiffs were owed interest on the 6,200 claims voluntarily paid by the Secretary. *Id.* at 683–84.

The plaintiffs claimed they were owed interest under the "clean claims" provision of the Medicare Act. *Id.* at 684. This provision provides that:

> (B)(i) The term 'clean claim' means a claim that has no defect or impropriety (including any lack of any required substantiating documentation) or particular

---

[1] Reimbursement for the 6,200 claims made up only part of plaintiffs' complaint, but discussion of other claims has been left out of this background. *See*, *S. Rehab. Grp.*, F.3d at 672–77. At this stage, Secretary Sylvia M. Burwell is the only remaining defendant.

> circumstance requiring special treatment that prevents timely payment from being made on this claim under this part.
>
> (ii) The term "applicable number of calendar days" means—
>
> (V) 30 calendar days.
>
> (C) If payment is not issued, mailed, or otherwise transmitted within [30 days] after a clean claim is received, interest shall be paid . . . for the period beginning on the day after the required payment date and ending on the date on which payment is made.

42 U.S.C. § 1395u(c)(2)(B) and (C).

The Secretary read the provision to be entirely inapplicable to claims initially processed to denial and paid only after judicial review, which would mean no interest was owed on the relevant claims. *S. Rehab. Grp.,* 732 F.3d at 685. The court applied *Skidmore* deference to the Secretary's interpretation, but found it unpersuasive. *Id.* at 685–86. The court read 42 U.S.C. § 1395u(c)(2)(B) and (C) to mean that:

> Congress placed only two limitations on the payment of interest under the clean-claims provision. First, the claim must be clean, meaning it has "no defects or improprieties." Second, if the claim is clean, interest is automatically due if the claim is not paid "within [30 days] after the . . . claim is received." That's it. There are no further limitations in Congress's express language.

*Id.* at 686 (internal citations omitted) (alterations in original).

The court found the Secretary's interpretation unreasonable because excluding claims initially processed to denial "place[d] additional limitations" beyond the two named in the statute. *Id.* Thus, the court reversed the district court's decision granting summary judgment to the Secretary on plaintiffs' claims for interest and remanded for further proceedings.[2] *Id.* at 686–87. The district court was ordered on remand to determine whether "interest is due on some or all of the 6,200 claims." *Id.*

---

[2] The court affirmed the district court's dismissal of plaintiffs' other claims for lack of subject matter jurisdiction. *See id.* at 680, 683.

The Secretary subsequently filed a motion for judgment on the pleadings. Her position was that prepayment review, to which the claims were subject, was a form of special treatment that exempted interest payments under the statute by making them not "clean." Plaintiffs responded by arguing that this was not a proper interpretation of the statute and that the Secretary's position was contrary to the Sixth Circuit's earlier opinion.

The district court granted summary judgment for the Secretary. *S. Rehab. Grp., P.L.L.C. v. Burwell*, 2015 WL 5703238, at *4 (E.D. Tenn. Sept. 28, 2015). The court held that a claim is "clean" if it is "free of defects or improprieties OR [if] the claim involves a 'particular circumstance requiring special treatment that prevents timely payment.'" *Id*. at *3 (quoting 42 U.S.C. § 1395u(c)(2)(B)(i)). The court concluded that the prepayment medical review of claims is a type of treatment that precluded interest payments under the provision and, because all the relevant claims had been subject to prepayment medical review, they were not "clean." *Id*. at *4. The court granted summary judgment to the Secretary. *Id.* This appeal followed.

## II

The district court had jurisdiction to consider the relevant claims under 42 U.S.C. § 1395ff(b)(1)(A) and 42 U.S.C. § 405(g). *See also S. Rehab. Grp.,* 732 F.3d at 684–85. This court has jurisdiction over the district court's final order under 28 U.S.C. § 1291.

## A

Plaintiffs argue that the district court considered arguments outside the scope of its mandate on remand. "When a case has been remanded by an appellate court, the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.'" *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (quoting *Hanover*

*Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).  This court reviews the scope of remand de novo.  *United States v. Hunter*, 646 F.3d 372, 374 (6th Cir. 2011).

Plaintiffs assert that this court remanded to the district court for the limited purpose "to address whether interest was due on [the relevant] claims," and that, instead, the court impermissibly considered arguments they allege the Secretary had waived: whether those claims were actually "clean."

> The relevant passage from the appellate court opinion is:

> On summary judgment, it was the Secretary's burden to show that no genuine issue of material fact exists as to plaintiffs' claim for interest.  But she cannot rely on her unreasonable interpretation of the clean-claims statute as a basis for summary judgment.  In order to be entitled to summary judgment, *she would presumably have to show that plaintiffs' claims were not clean claims* denied outside of the 30–day window.  On remand, *the district court should address whether interest is due on some or all of the 6,200 claims* for reimbursement that plaintiffs appropriately brought before the district court.

*S. Rehab. Grp.*, 732 F.3d at 686–87 (emphasis added).  In other words, we instructed the court to determine whether the claims were owed interest—noted they would be if both "clean" and unpaid after 30 days—and left it to the Secretary to prove they were not.  *See id.*

That is exactly what happened.  On remand, the Secretary endeavored to show the claims were not clean.  The district court agreed with her position and granted summary judgment.  *S. Rehab. Grp., P.L.L.C.*, 2015 WL 5703238, at *4.  These proceedings on remand tracked this court's order precisely.

Further, despite plaintiffs' contentions, the Secretary had not waived the argument that the relevant claims were not "clean" by failing to raise it in earlier proceedings.  Indeed, the Secretary had included this position in a footnote on the first appeal.  Case No. 12-5903, Doc. 006111645361, at 46, n.15 ("clean claims do not entail investigation or development by the Medicare contractor on a prepayment basis").  But it was unnecessary at that stage for her to

make this argument more fully. On the first appeal she was arguing that the "clean claims" provision did not apply to these claims *whatsoever*—the question of whether or not these claims were "clean" was entirely irrelevant to the Secretary's initial position. *See id.* at 47. However, once this court rejected her reading and held the clean-claims provision did apply, she prudently turned her full attention to the now-dispositive argument which she had left aside—whether the claims were "clean." *See S. Rehab. Grp.*, 732 F.3d at 686–87. As she had not waived the argument, it would be doubly improper to preclude her from making it after instructing on remand that it would be grounds for summary judgment.[3] *Id.*

Thus, the arguments made by the Secretary and considered by the district court were properly within the scope of remand.

**B**

Plaintiffs also challenge the district court's procedural decision to *sua sponte* grant summary judgment on defendants' post-remand Rule 12(b)(6) motion. Plaintiffs argue that this conversion denied them both notice and the opportunity for discovery as required by the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 12(d) requires that, upon conversion of a motion to dismiss to one for summary judgment, parties need only be given a "reasonable opportunity to present all the material that is pertinent to the motion." However, a district court may enter summary judgment *sua sponte* if the losing party is "afforded notice and reasonable opportunity

---

[3] Nor can the Secretary be said to have waived this argument because she voluntarily paid interest on some of the claims subject to prepayment medical review. It is not clear whether those interest payments were made because they were "clean claims" not paid after thirty days or because a different applicable provision of the Medicare statute applied. *See, e.g.*, 42 U.S.C. § 1395*l*(j) (requiring payment of interest when a final determination is made that a claim was underpaid initially and the difference was not paid within 30 days of that determination). The fact that the Secretary made some interest payments on some claims does not mean she forfeited the right to challenge plaintiffs' entitlement to interest on other claims.

to respond to all the issues to be considered by the court." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). Lack of formal notice "will be excused when it is harmless." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487–88 (6th Cir. 2009) (quoting 5C C. Wright & A. Miller, Federal Practice and Procedure § 1366, p. 198 (3d ed. 2004)).

Our review is for abuse of discretion. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A decision will be reversed for abuse of discretion only if we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000).

The district court's decision to *sua sponte* convert the Rule 12(b)(6) motion into one for summary judgment was not an abuse of discretion. The district court's final order had three necessary components. First, the clean-claims provision was read to mean a claim is not "clean" if it is subject to special treatment that prevents timely payment. *S. Rehab. Grp., P.L.L.C.*, 2015 WL 5703238, at *3. Second, prepayment medical review was deemed to constitute special treatment that prevents timely payment within the meaning of the statute. *Id.* *3. Third, the court held that all of the relevant claims had been subjected to prepayment medical review. *Id.* at *4. The first component is not genuinely disputed. Plaintiffs provided comprehensive counter arguments for the second component of the court's eventual order in their response to the Secretary's Rule 12(b)(6) motion. The order's third necessary component, going all the way back to the first district court filing in 2009, has never been in dispute. Plaintiffs therefore had adequate opportunity to respond to the issues considered by the district court in granting summary judgment *sua sponte* and, indeed, fully took advantage of the opportunity. *See Shelby*

*Cty. Health Care Corp.*, 203 F.3d at 932 (finding no abuse of discretion for *sua sponte* entry of summary judgment where both parties comprehensively addressed the argument for dismissal).

Not only did plaintiffs have the opportunity to respond to the relevant issues prior to the conversion, they effectively caused it. Plaintiffs attached an affidavit to their response to the Secretary's post-remand motion. It was the inclusion of this affidavit—identifying the relevant claims and again confirming they were subject to prepayment medical review—that necessitated the court's conversion of the motion. *See Mac Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d. 494, 503 (6th Cir. 2006). Again, the lack of notice was harmless: plaintiffs cannot have been surprised the motion was converted when the conversion was due to the court's reliance on the very affidavit they submitted. Therefore, the district court's procedural decision to *sua sponte* convert a Rule 12(b)(6) motion to one for summary judgment was not an abuse of discretion.

## C

This court reviews a decision to grant summary judgment de novo. *Gribcheck v. Runyon*, 245 F.3d 547, 500 (6th Cir. 2001). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden to show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## 1

Before considering the substance of the lower court's interpretation of the statute, we dispose of what appears to be some friction between our initial reading of the "clean claims" provision and that adopted by the district court. Although this court had said that a "clean claim" means one with "no defects or improprieties" and went no further, the district court pointed out

that the statute includes a category we failed to mention: claims involving "particular circumstances requiring special treatment that prevents timely payment." *S. Rehab. Grp., P.L.L.C.*, 2015 WL 5703238, at *3. Such claims, the court held, are also not "clean" under the provision. *Id* at *4.* The district court was not wrong. Reading the statute's plain language shows two alternative categories of unclean claims, either those with defects or improprieties *or* those involving particular circumstances requiring special treatment that prevents timely payment. *See* 42 U.S.C. § 1395u(c)(2)(B) and (C). Neither party genuinely disputes this reading.

Nor does it contradict the substance of this court's prior opinion. The necessary holding of that opinion was that the "clean claims" provision requires only two things for interest to attach: that claims are "clean" and that they are unpaid within a specified time after submission. It was not necessary for this court's holding to determine what makes a claim "clean" under the provision. Thus, the district court correctly held that the clean-claims provision provides two categories of unclean claims: (1) those with defects or improprieties, or; (2) those subject to circumstances requiring special treatment that prevents timely payment. 42 U.S.C. § 1395u(c)(2)(B).

## 2

No interest is payable by the federal government except where Congress has expressly authorized it. *Library of Congress v. Shaw*, 478 U.S. 310, 315 (1986). The "clean claims" provision in the Medicare Act is Congress's express authorization of interest in this case. *See S. Rehab. Grp.*, 732 F.3d at 684. The provision requires the government to make interest payments on the relevant claims if two conditions are satisfied: first, that the claims are "clean" under the

statutory meaning; and second, that the claims have been unpaid for 30 days. *See id* at 685; 42 U.S.C. § 1395u(c)(2)(B) and (C).

The Secretary asserts that the 6,200 claims at issue are not clean as a matter of law and she is therefore not authorized to pay interest on them. Under the provision, a claim is "clean" unless it has "defects or improprieties" or it is "subject to particular circumstances requiring special treatment that prevents timely payment." *See id.* The Secretary asserts that prepayment medical review constitutes special treatment preventing timely payments. The district court agreed. *S. Rehab. Grp., P.L.L.C.*, 2015 WL 5703238, at *4.

We employ the usual tools of statutory interpretation to determine if prepayment medical review is a type of "special treatment that prevents timely payment" under the clean-claims provision. We begin this analysis "by examining the language of the statute itself to determine if its meaning is plain." *Nat'l Air Traffic Controllers Ass'n v. Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011) (internal quotation marks omitted). "Plain meaning is examined by looking at the language and design of the statute as a whole." *Id.* (internal quotation marks omitted).

The plain language of the statute supports a reading that claims subject to prepayment medical review are not "clean." For a claim not to be clean under the relevant clause, two conditions must be satisfied. First, the claim must be "subject to particular circumstances requiring special treatment." 42 U.S.C. § 1395u(c)(2)(B). Second, that special treatment must "prevent[] timely payment." *Id.*

Here, the provider was subject to an onerous Progressive Corrective Action plan under which all relevant claims were submitted to prepayment medical review. While most Medicare claims are paid upon receipt, prepayment medical review is an error prevention program applying "to those services and items that pose the greatest financial risk to the Medicare

program and that represent the best investment of resources." *See* Medicare Program Integrity Manual, CMS Publication #100-08, ch. 3, § 3.2.1. In other words, prepayment medical review is atypical.[4] Indeed, 100 percent prepayment medical review of a provider's claims, like that here, is used only in exceptional circumstances. *See id.* at § 3.1 (contractors "shall deal with serious problems using the most substantial administrative actions available, such as 100 percent prepayment review of claims"). The prepayment medical review process itself *requires* detailed, individualized consideration of the claims to ensure proper billing and avoid payment errors. *See id.* at §§ 3.3.1, 3.3.1.1–2. Thus, prepayment medical review constitutes a particular circumstance requiring special treatment of Medicare claims.[5]

In addition to being subject to special treatment, however, that special treatment must also "prevent[] timely payment." 42 U.S.C. § 1395u(c)(2)(B). This condition can be read one of two ways. Either a treatment "prevents timely payment" in that it delays payment; or it "prevents timely payment" in that it causes payment to fall outside the 30-day, interest-free window. The phrase "timely payment" is not used elsewhere in the statute and is not defined. However, where Congress intended to refer to a specific timeline for payment in the section, it used the phrase "applicable number of calendar days." *See* 42 U.S.C. § 1395u(c)(2)(B)(ii), (C), and (3)(A). Accordingly, the phrase "prevents timely payment" should not be conflated to mean failure to pay by the statutory deadline as Congress was explicit when referring to those

---

[4] Indeed, it would not be practical to implement medical review of all claims. *See id.* at § 3.2.1 (providing guidance for when medical review applies and noting that "the claims volume of the Medicare Program doesn't allow for review of every claim"); *See also United States v. Sanet*, 666 F.2d 1370, 1372 (11th Cir. 1982) (noting "it would not be administratively feasible to routinely require, in advance of payment, full medical documentation of" claims).

[5] We note, for the sake of clarity, that "prepayment medical review," as applied, is both a "particular circumstance" *and* a "special treatment." A claim placed under prepayment medical review—and so subject to a particular circumstance—is given special treatment—the additional, individualized scrutiny imposed by the review itself.

deadlines. *See, e.g.*, 42 U.S.C. § 1395u(c)(2)(C) ("[i]f payment is not issued, mailed, or otherwise transmitted within the applicable number of calendar days…"). Reading the phrase "prevents timely payment" to mean exactly the same thing as "payment not…transmitted within the applicable number of calendar days" would contravene the presumption that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *DePierre v. United States*, 564 U.S. 70, 83 (2011) (quoting *Sosa v. Alvarez–Machain*, 542 U.S. 692, 711, n. 9 (2004)). Therefore, in its statutory context, the phrase referring to treatment that "prevents timely" payment, refers to treatment that delays it.

Prepayment medical review delays payment. First, it seems almost too obvious to note that prepayment medical review, as particularized review of claims *before* payment, will delay it. *See* Medicare Program Integrity Manual, CMS Publication #100-08, ch. 3, §§ 3.3.1, 3.3.1.1–2. Relatedly, prepayment review is conceptually distinct from post-payment review—an alternative treatment in which a contractor ensures proper billing only *after* payment. *See id.* at § 3.2. Finally, prepayment medical review includes various possibilities that, if triggered, would *substantially* delay processing. *See e.g.*, *id.* at § 3.2.3.2 (providing 45 days for providers to respond to a request for additional documentation); *id.* at § 3.2.3 (requiring contractor to hold claims for 7–10 days upon notice of forthcoming unsolicited documentation and then requiring a determination within 30 days of receiving that documentation).

In sum, under the statute's plain meaning, claims subject to prepayment medical review are subject to particular circumstances requiring special treatment that prevents timely payment and are therefore not "clean" under the clean claims provision.

This reading is consistent with that adopted by other authorities. The Secretary's interpretation has long been that "clean claims are defined as claims that do not require Medicare [contractors] to investigate or develop them outside of their Medicare operations on a prepayment basis." 73 Fed. Reg. 36522, 362526 (June 27, 2008). Likewise, the Seventh Circuit has read the clean-claims provision to mean that claims subject to prepayment medical review were not clean. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 591 (7th Cir. 2014). Moreover, this reading is consistent with the legislative history of the provision. *See* H.R. Rep. No. 99-727, at 440 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3607, 3837 (noting that claims are clean if they "do not require special treatment, such as medical review"). Considering this persuasive authority alongside the statute's plain language, it can be said that claims subject to prepayment medical review are not "clean" as a matter of law.

Plaintiffs insist this is a factual issue. They contend that the Secretary must show that the claims themselves both *required* prepayment medical review and that medical review, of some specificity, *actually* took place. These factual findings are unnecessary under a fair reading of the statute. Indeed, reading the statute to require the Secretary to show prepayment medical review was required due to some characteristic of a claim itself would be to read-out the statute's disjunctive language that makes a claim unclean if it *either* has a defect or impropriety *or* if it is subject to particular circumstances requiring special treatment. *See* 42 U.S.C. § 1395u(c)(2)(B). Despite plaintiffs' contentions, the provision's second category would be made meaningless if it required a finding that a claim had some characteristic necessitating individualized review—flaws in individual claims are already covered by the first category. Thus, in order for us to find the claims were not clean under a fair reading of the statute, the Secretary may merely show the claims were *subject to* a particular circumstance requiring special treatment. In this case, the

claims were subject to prepayment medical review—a particular circumstance requiring special treatment.

Finally, this interpretation of the statute does not unduly conflict with its purpose. As stated in our previous opinion, the interest authorization in the Medicare statute is meant to incentivize the prompt payment of claims. *See S. Rehab. Grp.,* 732 F.3d at 685–86. However, the requirement that claims be "clean" before interest attaches reflects Congress's need to balance prompt payment with its interest in preventing fraud and overpayment. *See* H.R. Rep. No. 99-727, at 440 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3607, 3837. Prepayment medical review is designed to prevent overpayment and is atypical treatment that does not apply to the vast majority of claims. *See* Medicare Program Integrity Manual, CMS Pub. #100-08, Ch. 3, § 3.1. The Secretary's responsibility to pay only valid claims and do so promptly is fully consistent with a finding that, in the unusual case where prepayment medical review applies to a claim, the claim is not owed interest under the statute.[6] This reading reflects the provision's purpose of balancing the competing interests of prompt payment and preventing overpayment.

As the claims at issue were subject to prepayment medical review, they are not "clean" under the clean-claims provision and the Secretary owes no interest. Accordingly, the district court did not err in granting summary judgment for the Secretary.

**V**

For the foregoing reasons, we AFFIRM the decision of the district court.

---

[6] Indeed, that prepayment medical review is atypical treatment is an essential element of our holding. Were the Secretary to submit *all* future Medicare claims from all providers to such review (say, in an attempt to avoid interest payments across-the-board), the treatment would no longer be "special" and would not fit within the exception to paying interest we find applies here.

**BOGGS, Circuit Judge, Dissenting.**

The majority's opinion echoes the Secretary's position, in the abstract, that a claim cannot be "clean" if it is "subject to a particular circumstance requiring special treatment." (Op. at 11–12 & n.5, 14). This would be a sensible reading, were it not for the Secretary's explicit position that such a "particular circumstance" can be simply the Secretary's assertion that a claim, category of claims, or claims from a particular provider, shall be subjected to such individualized review, and that no reason whatsoever need be supported, or even asserted. The distinction between "supported" and "asserted" is crucial, in that the Secretary's position would be much stronger if it were only that the Secretary did not bear the burden of proving the necessity for such review in every instance. An alternative, and much lighter, burden would be the equivalent of the burden-shifting in *McDonnell Douglas* cases, *e.g.*, 411 U.S. 792 (1972), where the defender of an action (in this case the Secretary) would need only to *assert* a "legitimate non-discriminatory reason" or something similar in order to shift the burden of production, or even persuasion or proof.

Instead, the Secretary's explicit position (which the majority does not advert to) is that the Secretary's placing a claim or a category of claims under review prevents such claims from being "clean," no matter the reason. The Secretary's decision is still considered inviolate, when made for any reason or no reason—even, at the extreme, a discriminatory reason. *See* Def.'s Resp. in Opp'n to Pls.' Mot. for Leave to File Second Am. Compl. 4 ("Even in extreme cases when an intentional and invidious motivation—e.g., racial discrimination—is alleged to be the reason that a practitioner's Medicare claims are placed on prepayment review, there is no potential relief [by way of interest payment].").

I cannot agree with such an extreme interpretation, or its sanctification by this court's opinion, and I therefore respectfully dissent.