NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0493n.06

Case No. 17-2165

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 03, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NEW VISION HOME HEALTH CARE, INC.; SALEEM BIN SHAKOOR, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| ANTHEM, INC.; TRUSTSOLUTIONS, LLC; NATIONAL GOVERNMENT SERVICES, INC., | ) ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** In this Medicare reimbursement dispute, appellants New Vision Home Health Care, Inc. and Saleem Bin Shakoor (collectively, "New Vision") appeal the district court's dismissal of their claims against appellees Anthem, Inc. ("Anthem"), TrustSolutions LLC ("TrustSolutions"), and National Government Services, Inc. ("NGS") (collectively, "Contractors") for lack of subject matter jurisdiction.

On Counts I and II of the complaint, which sought a writ of mandamus ordering an Administrative Law Judge ("ALJ") to enforce its 2013 order, the district court held that it did not have jurisdiction because New Vision had failed to satisfy administrative exhaustion and presentment requirements. *See New Vision Home Health Care, Inc., et al. v. Anthem, Inc., et al.*,

1

No. 16-13173, 2017 WL 3704379, at *1, *6 (E.D. Mich. Aug. 28, 2017). In addition, the court found that the ALJ's order did not subject appellees to an enforceable, "clear nondiscretionary duty," required for mandamus. *Id.* at *6.

On Counts III–VIII, the court found that New Vision had failed to exhaust its administrative remedies and was therefore barred from suing on claims "arising under" the Medicare statute. *Id.* at *6–7.

For the reasons that follow, we AFFIRM the district court's decision on all Counts.

## I. FACTS

Appellant New Vision is a home healthcare provider that is reimbursed by Medicare for qualifying services provided to patients. Appellee TrustSolutions is a Medicare "Program Safeguard Contractor" (PSC). Appellee NGS is a Medicare "Administrative Contractor" responsible for making initial determinations on providers' claims for reimbursement. Appellee Anthem is a for-profit healthcare insurer with an interest in the resolution of this case because of its transactions with TrustSolutions.

This dispute began in 2007, when TrustSolutions conducted an audit of Medicare payments made to New Vision between 2003 and 2006 and determined that some of the services previously reimbursed had not, in fact, qualified for Medicare coverage. Based on this determination, TrustSolutions took a sample of the claims and entered the data in a formula to extrapolate an estimated total amount that New Vision had been overpaid. The extrapolated amount was over $4 million.

New Vision appealed that determination through the Medicare appeals process and obtained a favorable decision from an ALJ in 2011.[1] *See New Vision Home Health Care,*

---

[1] This was not the first ALJ hearing in this dispute, but the first one and its procedural history are not relevant to this appeal.

*Inc.*, 1-737870647 (ALJ Appeal No.), Docket Number: M-12-388, 2012 WL 891098, at \*1 (H.H.S. Feb. 8, 2012). The ALJ found that the formula used by TrustSolutions to extrapolate the overpayment was faulty and therefore the amount calculated was not valid. *Id.* at \*4.

Contractors appealed the ALJ's decision to the Medicare Appeals Council, which remanded for another ALJ hearing. That hearing resulted in the 2013 decision at issue in this case. The ALJ agreed with Contractors that some of the disputed claims previously submitted by New Vision between 2003 and 2006 had not been eligible for reimbursement (as TrustSolutions had already determined); however, many more of those claims *had* been eligible. The "actual overpayment amount" determined by the ALJ was $35,872.28, far less than the $4 million-plus extrapolated by TrustSolutions. The ALJ ordered Contractors "to process the claims and claim lines at issue in accordance with this decision" and ordered that "[a]ny amounts recouped or otherwise recovered from the Provider based upon the invalid overpayment demands herein shall be returned to [New Vision]."

After the ALJ issued the 2013 decision, Contractors made an interest calculation and added it to the "actual overpayment amount;" they then deducted amounts already repaid by New Vision and determined that New Vision owed Contractors $41,675.65. Contractors sent New Vision a request for reimbursement of this amount, but New Vision never paid. In addition, according to New Vision's allegations, beginning after 2006[2] Contractors withheld from New Vision all payments on reimbursements for approved claims. New Vision asserted that Contractors had a policy of withholding future payments to recoup past overpayments and that because Contractors "never provided any notice to [New Vision] that they were subject to any other audits, the

---

[2] In its brief, New Vision states that the withholdings began after 2006, but its Second Amended Complaint stated that they began in 2010. The district court used the 2006 date because New Vision also used that date in some of its other filings. We will use the 2006 date as well, but the exact date is not relevant to the jurisdictional questions raised by this appeal.

3

withholding . . . has no reasonable explanation other than as an attempt" to recoup. However, according to New Vision, Contractors have withheld over $200,000 in payments since 2006—approximately five times the $41,675.65 that New Vision was due to reimburse Contractors under the ALJ's 2013 decision.

## II. PROCEDURAL BACKGROUND

In 2016, New Vision brought this action in the district court seeking a writ of mandamus for enforcement of the 2013 ALJ decision (Counts I and II) and asserting the following claims for monetary relief: Count III (negligence under Michigan law), Count IV (gross negligence under Michigan law), Count V (tortious interference with business relationships under Michigan law), and Count VI (violation of procedural due process rights under the federal Constitution and the Michigan constitution).

In addition, New Vision sought a declaratory judgment under 28 U.S.C. § 2201 (Count VII) and an injunction under Federal Rule of Civil Procedure 65, ordering Contractors to comply with the ALJ's 2013 order, among other requirements (Count VIII).

In support of its request for mandamus, New Vision alleged that (1) Contractors' withholding of over $200,000 in payments since 2006 violated the portion of the ALJ's 2013 decision that required Contractors to "release . . . all improperly retained funds owed to" New Vision and that (2) Contractors improperly retained the post-2006 payments in an attempt to recoup overpayment amounts based on TrustSolutions's initial determination of over $4 million, which had been invalidated by the ALJ. New Vision argued that the ALJ's order created a "clear legal duty" for Contractors to make the payments withheld on post-2006 claims. The existence of this clear duty, New Vision claimed, gave the district court jurisdiction to issue a writ of mandamus.

Contractors filed a motion to dismiss, which the district court initially denied. Contractors then filed a motion to reconsider, which the district court granted. On reconsideration, the district court agreed with Contractors that it did not have subject matter jurisdiction over New Vision's claims, and it granted Contractors' motion. The district court found it lacked jurisdiction over Counts I and II (seeking mandamus relief) because, first, New Vision had not satisfied the exhaustion and presentment requirements of the administrative appeals process with regard to its post-2006 claims, and, second, the ALJ's 2013 order did not create a "clear nondiscretionary duty" in Contractors. *See New Vision*, 2017 WL 3704379, at *6. Finally, the district court also found it lacked jurisdiction over Counts III–VIII of the complaint because New Vision had not exhausted its administrative remedies on those claims. *See id.* at *6–7.

New Vision appealed.

### III. STANDARD OF REVIEW

We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 358 (6th Cir. 2000). We may affirm the district court's dismissal on any ground and are "not restricted to ruling on the district court's reasoning . . . ." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999); *see also Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014).

### IV. STATUTORY BACKGROUND

The Medicare statute describes a four-step process by which Medicare service providers may appeal administrative determinations. 42 U.S.C. § 1395ff. First, if the provider is not satisfied with the initial determination of the Medicare Administrative Contractor, it may ask the contractor to conduct a "redetermination." *Id.* § 1395ff(a)(3). The second step is to seek "reconsideration" with a Qualified Independent Contractor ("QIC"). *Id.* § 1395ff(b)–(c). Third, the provider may

appeal to an ALJ. *Id.* § 1395ff(d)(1). The ALJ may make a decision or remand to the QIC. *Id.* § 1395ff(b). "The decision of the ALJ or attorney adjudicator on a request for hearing is binding on all parties unless" one of five exceptions applies, including an exception for claims appealed to the Medicare Appeals Council ("Council"). 42 C.F.R. § 405.1048. Fourth, and finally, the provider may appeal to the Council, which may enter a final decision or remand to the ALJ. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100(c). "The Council's decision is final and binding on all parties unless a Federal district court issues a decision modifying the Council's decision or" if another exception, not at issue here, applies. 42 C.F.R. § 405.1130.

After going through this process, a provider may still seek relief in a United States district court if it satisfies certain strict requirements. The parties dispute whether New Vision has satisfied the jurisdictional requirements of 42 U.S.C. § 405(g), which provides:

> Any individual, after any final decision[3] of the [Secretary of Health and Human Services][4] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary] . . . .

In addition, access to judicial review on claims "arising under" the statute is available only to those who follow the prescribed process:

> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or

---

[3] This court has made clear that, for purposes of the four-step Medicare appeals process and the judicial review provisions in 42 U.S.C. § 405(g) and (h), the decision of the Council "is considered the final decision of the Secretary." *S. Rehab. Grp., P.L.L.C. v. Sec'y of Health & Human Servs.*, 732 F.3d 670, 673 (6th Cir. 2013).

[4] § 405 is part of the Social Security Act but has been incorporated into the Medicare statute; thus, all references to the "Commissioner" in the original are replaced here with references to the Secretary of Health and Human Services. *See* 42 U.S.C. § 1395ff(b)(1)(A).

any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (incorporated into the Medicare statute at 42 U.S.C. § 1395ii).

## V. DISCUSSION

As a preliminary matter, we note that if a motion to dismiss for lack of subject matter jurisdiction "attack[s] the claim of jurisdiction on its face . . . all allegations of the plaintiff must be considered as true . . . ." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Here, New Vision argues that the district court applied the wrong legal standard in granting Contractors' motion because it considered affidavits and other evidence outside the pleadings. However, although the district court did cite authority indicating it believed it could consider evidence outside the pleadings, its resolution of the motion to dismiss turned only on whether New Vision had exhausted the Medicare appeals process—a determination for which the underlying facts were not disputed. New Vision and Contractors agree on how many steps New Vision completed in the Medicare appeals process; the question is whether those steps amounted to exhaustion as a matter of law. The district court's ruling that it lacked subject matter jurisdiction, therefore, did not go beyond the pleadings.

We now turn to the jurisdictional question. To satisfy the Supreme Court's test for mandamus jurisdiction under 28 U.S.C. § 1361, New Vision must show both that it has "exhausted all other avenues of relief" and that Contractors "owe[] [New Vision] a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *accord BP Care, Inc. v. Thompson*, 398 F.3d 503, 514–15 (6th Cir. 2005).

The district court correctly determined that New Vision has not exhausted all other avenues of relief. Instructive in this regard is *BP Care*, in which we rejected a Medicare claimant's request for a mandamus writ and determined that the exhaustion analysis for mandamus jurisdiction in

administrative cases duplicates the exhaustion analysis for determining whether a district court has

federal-question jurisdiction:

> Both the Supreme Court and this circuit have avoided deciding whether § 405(h) bars mandamus jurisdiction under 28 U.S.C. § 1361, in the same way that it bars jurisdiction under §§ 1331 and 1346. The Supreme Court has, however, muted the importance of the question by holding in *Ringer* that a litigant who has a remedy available under § 405 has not met the exhaustion of remedies requirement for mandamus. Thus, the *Ringer* decision has an effect similar to that of placing mandamus within § 405(h)'s jurisdictional bar. The conclusion that the district court lacked jurisdiction over BP Care's claims under § 1331, because of BP Care's failure to present its claims to the agency and to exhaust administrative remedies, therefore applies equally to bar mandamus jurisdiction.

398 F.3d at 515 (citations omitted). Following *BP Care*, we apply the exhaustion analysis for

federal-question claims and conclude that because New Vision has not exhausted its administrative

remedies, it has not satisfied the exhaustion requirement for mandamus jurisdiction.

We begin our exhaustion analysis with *Southern Rehabilitation Group, P.L.L.C. v.*

*Secretary of Health and Human Services*, 732 F.3d 670, 678 (6th Cir. 2013). In that case, we held

that plaintiffs who "seek[] judicial review of the Secretary's final decision" must satisfy three

requirements under 42 U.S.C. § 405(g) and (h): they must "present[] their claims to the Secretary;"

they must "exhaust their administrative remedies resulting in a final decision;" and they may not

"rais[e] federal question claims that are inextricably intertwined with their claim for benefits." *S.*

*Rehab.*, 732 F.3d at 678 (internal quotation marks omitted).[5]

As this formulation makes clear, the Medicare statute's exhaustion requirement calls for a

"final decision" from the Secretary. 42 U.S.C. § 405(g). The district court acknowledged this

requirement and found that New Vision had not met it. This determination was correct. Although

New Vision describes the 2013 ALJ order as "final and binding" under 42 C.F.R. § 405.1048, this

---

[5] Although *Southern Rehabilitation* addressed a matter of benefit determinations, Medicare providers are subject to the same jurisdictional requirements. *See, e.g.*, *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480 (7th Cir. 1990).

regulation simply states that "[t]he decision of the ALJ . . . on a request for hearing is binding on all parties," with a number of exceptions that do not apply here. 42 C.F.R. § 405.1048(a). This section does not address "finality" for purposes of judicial review of agency action. Instead, the statute and regulations, as well as our case law, demonstrate that the Council's decisions, not the ALJ's, are the final decisions of the Secretary and satisfy the jurisdictional prerequisite. *See* 42 C.F.R. § 405.1100(c) ("When the Council reviews an ALJ's . . . decision," it "issues a final decision or dismissal order or remands a case to the ALJ . . . ."); *id.* § 405.1130 (describing the Council's decision as "final and binding"); *S. Rehab.*, 732 F.3d at 673 (stating that when "the ALJ denies the claim," the Council's "decision is considered the final decision of the Secretary"); *cf.* 42 C.F.R. § 405.904(a)(1) (beneficiaries seeking review of agency determinations may sue after obtaining a decision from the Council). Thus, because it has not obtained a decision from the Council regarding any adverse aspects of the ALJ's 2013 decision, New Vision has obtained no final agency decision and has not exhausted its remedies.

Assuming that New Vision had obtained a final decision affirming the ALJ's 2013 decision, the district court still would have been correct in denying mandamus relief because the terms of the ALJ's 2013 decision do not place Contractors under a clear duty to pay New Vision for post-2006 claims. If the terms of the ALJ's 2013 decision are clear at all, it is clear that they reference only claims on which New Vision had been overpaid between 2003 and 2006. The order says to "process the claims and claim lines at issue," and the claims at issue were those included in TrustSolutions' audit: claims for which New Vision had already been paid and about which the dispute was simply how much New Vision had been overpaid. But New Vision wants relief beyond the scope of the ALJ's 2013 decision. What New Vision seeks is a remedy that not only

takes into account reimbursement of the pre-2006 overpayment but also compels payment for post-2006 claims. This latter component is not contemplated by the ALJ's 2013 decision.

Moreover, even if the ALJ's 2013 decision was meant to address post-2006 claims, that intention is not clear enough to support a writ of mandamus because it does not sufficiently define an amount owed. In this regard, *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987) is analogous. There, we found the duty was not sufficiently well defined where the parties disagreed about the amount of backpay owed to the claimant pursuant to an EEOC decision. The EEOC decision in that case ordered that "the Complainant be reinstated with reasonable accommodation; be awarded backpay, seniority and benefits that may have accrued since the effective date of the denial of the Complainant's request for light duty deducting any duplicative award the Complainant may have received prior to the issuance of this decision." *Id.* at 309. We found that this order's terms were not "readily ascertainable" and therefore did not support mandamus jurisdiction. *Id.* at 310. "We conclude[d] that when a duty is disputed or subject to various interpretations, for instance when unliquidated damages are involved, the duty is not 'owed' in that the obligation to do a particular act cannot be said to be clear, peremptory, defined or ministerial within the meaning of section 1361." *Id.* (citations omitted).

As in *Maczko*, so here, the agency order at issue does not contain instructions regarding an amount owed. The ALJ's 2013 decision does not quantify any sum for post-2006 claims. In short, the duty New Vision seeks to have enforced is not "clear, peremptory, defined or ministerial" in the ALJ's 2013 decision. *Id.* Rather, that decision left it to Contractors to determine what "amounts recouped" should be returned to New Vision and contains no directive with regard to payment of post-2006 claims.[6] Although Contractors may have behaved poorly in not making

---

[6] Asserting that the district court "read a temporal requirement into the order which was simply not there," New Vision argues that the ALJ's instruction to Contractors to return "amounts recouped" refers to all amounts wrongly recouped

reimbursements after 2006, their actions are not in conflict with the ALJ's 2013 decision. That decision, therefore, is not a clear enough basis to support mandamus jurisdiction.

New Vision nevertheless argues that this case is comparable to *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 770 (5th Cir. 2011), in which the Fifth Circuit found the district court did have mandamus jurisdiction even though the administrative order did not specify an amount to be paid. The facts here, however, do not align with *Wolcott*. There, the plaintiff provider sought administrative review of denied claims for Medicare reimbursement. The ALJ reversed the denial of claims and found that the plaintiff was "entitled" to payment on them. *Id.* at 761. The Fifth Circuit found that the district court had mandamus jurisdiction because the defendant had a "non-discretionary duty to pay a successfully appealed claim." *Id.* at 770.

This case is different. New Vision has not sought any administrative review of any withheld payments for post-2006 claims. There is no ALJ order finding New Vision entitled to anything for those claims. Nor is there any determination that any amount has been withheld that is owed for those claims. By contrast, in *Wolcott*, the Fifth Circuit found there was subject matter jurisdiction because the plaintiff "ask[ed] the district court to compel the defendants to process and pay claims in accordance with binding final administrative decisions ordering payment of these claims." *Id.* at 766. This language from *Wolcott*, rather than supporting New Vision's position, suggests that New Vision's route to relief should be to challenge Contractors' nonpayment through the administrative process and obtain an order requiring payment.

---

or withheld, past, present, and future. We, by contrast, agree with the district court that the wording suggests the ALJ's 2013 decision contemplated only funds withheld prior to the date of the decision. That there is room for dispute about the future application of the order supports our conclusion that Contractors were not under a clear nondiscretionary duty. On that point, it is worth noting that we found no clearly defined duty in *Maczko*, despite the EEOC order's placing temporal boundaries on the calculation. *See* 814 F.2d at 309 (discussing the EEOC order, which required that the plaintiff "be awarded backpay, seniority and benefits that may have accrued *since the effective date of the denial* of the Complainant's request for light duty deducting any duplicative award the Complainant *may have received prior to the issuance of this decision*" (emphasis added)).

Because New Vision has not demonstrated that Contractors were under a clear nondiscretionary duty to make payments on New Vision's post-2006 reimbursement claims, the district court correctly found that it lacked subject matter jurisdiction to grant mandamus relief on those claims based on the ALJ's 2013 decision. Therefore, the district court properly dismissed Counts I and II of New Vision's complaint.

We now turn to Counts III–VIII. The district court also dismissed each of these for lack of subject matter jurisdiction, finding that New Vision was required to exhaust its administrative remedies and had not done so. *See New Vision*, 2017 WL 3704379, at *6–7. In reaching this conclusion, the court applied the same exhaustion analysis it applied to New Vision's mandamus claims. Thus, it held that New Vision was required to pursue its tort and constitutional claims through the four-step Medicare appeals process. Under this court's precedent, the district court reached the correct result.

As discussed above, the exhaustion requirement comes from the jurisdictional limitations in 42 U.S.C. § 405(g) and (h). *S. Rehab.*, 732 F.3d at 678. Section 405(g) prescribes a process for review of administrative decisions. Section 405(h) limits the power of federal courts to hear claims related to those decisions: "No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

In *Southern Rehabilitation*, this court said that state-law claims are subject to the same analysis as federal claims for purposes of § 405(h). 732 F.3d at 677 n.6. We also applied the same analysis to all of the plaintiffs' assertions of jurisdiction over their federal claims, including under 28 U.S.C. § 2201 (the declaratory judgment statute). *See* 732 F.3d at 674, 680. Under *Southern*

*Rehabilitation*, therefore, New Vision was required to exhaust its administrative remedies with regard to all of its claims in Counts III–VIII arising under the Medicare statute.

New Vision objects that because Contractors are not "the United States, the [Secretary], or any officer or employee thereof," the jurisdictional limitation does not apply to this lawsuit. But in *Southern Rehabilitation*, we read the Medicare Act as a whole and determined that Medicare contractors, acting within the scope of their authority, were "agents" of the United States government and therefore enjoyed § 405(h) immunity to the same extent as the United States. 732 F.3d at 680 n.7.

New Vision also contends that its claims do not "arise under" the Medicare statute. Thanks to *Southern Rehabilitation*, this assertion fails too. In that case, we affirmed dismissal of the plaintiffs' state-law claims for breach of contract, fraud, and negligence (among others) as well as its federal constitutional claims for failure to satisfy the presentment requirement of § 405(g) and (h). 732 F.3d at 674, 680. In so doing, we found that the state-law and federal constitutional claims were "inextricably intertwined with the claim for review of the Secretary's decision" and must, like claims for review, "be presented to the agency . . . ." *Id.* at 679.

Here, the district court dismissed New Vision's claims for failure to exhaust, rather than failure to present. Because (as discussed above) New Vision did not obtain a final decision from the Council on any of its claims, the district court appears to have made the correct decision. However, we need not determine whether New Vision exhausted its administrative remedies on the state-law and federal constitutional claims because New Vision failed to present its claims to the agency as required by *Southern Rehabilitation*. In that case, we found that because plaintiffs "d[id] not allege they ever presented their federal or state law claims to the agency," it did not matter that they claimed to have "exhausted the administrative review channels[] and properly

13

progressed through the administrative review process." *Id.* at 679–80 (internal quotation marks omitted).

New Vision does claim to have presented its theories of relief to the agency, but its argument to that effect mirrors that of the *Southern Rehabilitation* plaintiffs in simply reiterating that it *exhausted* its administrative remedies. This strategy, we have held, will not avail. *See id.*

The closest New Vision gets to a meritorious argument that it presented its claims is by contending that it "raised the facts underlying the tort and due process causes of action to the ALJ." New Vision asserts that statements in the ALJ's 2013 order show that the ALJ heard and considered these facts. In particular, the ALJ chastised Contractors for failing to use due care and for making serious errors, among other misdeeds, in calculating the amount they thought New Vision had been overpaid. However, the district court found, and we agree, that whatever the ALJ may have determined about Contractors' actions, those determinations did not affect the substance of its order. *See New Vision*, 2017 WL 3704379, at *7. The ALJ order simply found Contractors had made calculation mistakes and had overestimated the overpayments to New Vision. This conclusion would have been the same regardless of whether Contractors had acted from sterling motives or had been grossly negligent. There is no evidence the ALJ considered Contractors' behavior as a separate or additional ground for relief, especially since New Vision was not seeking a remedy for Contractors' behavior but was seeking reversal of their amount determination. Not until its district court filing did New Vision seek relief (in the form of damages and an injunction) for alleged violations of its rights, and extensively detail why Contractors' actions should entitle it to relief on those claims.

But New Vision argues that *Bodimetric Health Services, Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 486 (7th Cir. 1990) supports its claim that it can satisfy presentment requirements by

simply airing its "theories" of tortious and constitutional harms before the ALJ. *Bodimetric* does not provide an obviously available hook for New Vision to hang its hat on, though, given that the Seventh Circuit found it did not have federal subject matter jurisdiction over the plaintiff's claims. *Id.* at 487. To be sure, the Seventh Circuit acknowledged (as New Vision stresses) that "no provision in the regulations prohibit[ed] [Bodimetric] from introducing the facts underlying its claims during the administrative hearings" and that "Bodimetric *can* seek review of Aetna's denials through Medicare's administrative process . . . [and] the ALJ can provide relief . . . through the reversal of denied claims." *Id.* at 486. But the court made these statements while distinguishing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), which had found an exception to the § 405(h) jurisdictional requirements for plaintiffs who had no possibility of review at all in the administrative process because their challenges were to the validity of underlying regulations. *See Bodimetric*, 903 F.2d at 486 (citing *Mich. Acad.*, 476 U.S. at 676 n.6).

The Seventh Circuit thus distinguished *Michigan Academy*, pointing out that Bodimetric did have an administrative avenue for relief, and found judicial review *precluded* by § 405(g) and (h): the opposite of the result New Vision desires here. *Bodimetric*, 903 F.2d at 487, 489–90; *see also id.* at 486 (Bodimetric's state-law tort claims and RICO claims, which it based on its travails in the administrative process, were, "at bottom, a challenge to Aetna's approach to processing claims. Judicial review of such a challenge seems to be foreclosed by [Supreme Court precedent]."). Nowhere did the *Bodimetric* court indicate that Bodimetric's presentation to the ALJ of facts that would also support state or federal claims for damages satisfied the jurisdictional hurdle in § 405(g) and (h). As the Seventh Circuit did in *Bodimetric*, we hold that New Vision's state-law and federal constitutional claims for relief "arise under" the Medicare statute and must

be dismissed because New Vision failed to satisfy the statute's jurisdictional requirements. *See* 903 F.2d at 489–90.

In sum, the district court correctly concluded that it did not have subject matter jurisdiction over Counts III–VIII because New Vision did not satisfy the presentment and exhaustion requirements of 42 U.S.C. § 405(g) and (h) on those claims. Therefore, the dismissal for lack of subject matter jurisdiction was proper.

## VI. CONCLUSION

Because we find that the district court correctly dismissed New Vision's claims for lack of subject matter jurisdiction, we AFFIRM the holding of the district court on all Counts.